# EXHIBIT C

MICHAEL J. YAMAGUCHI
United States Attorney

GEOFFREY A. ANDERSON
Chief, Organized Crime Strike Force

ELIZABETH K. LEE
Assistant United States Attorney
Organized Crime Strike Force
Northern District of California
450 Golden Gate Avenue
San Francisco, California 94102
Telephone (415) 556-0756

Attorneys for Applicant

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN THE MATTER OF THE APPLICATION )   Crim. No.
OF THE UNITED STATES OF AMERICA  )
FOR AN ORDER AUTHORIZING THE     )
INTERCEPTION OF WIRE             )
COMMUNICATIONS                   )
                                 )
_____)
                                         UNDER SEAL OF COURT

AFFIDAVIT IN SUPPORT OF APPLICATION

I. INTRODUCTION

1.   I, Carol K. O. Lee, Special Agent, United States
Department of Justice, Federal Bureau of Investigation (FBI),
presently assigned to the San Francisco Office, being duly sworn,
state:

2.   I am an "investigative or law enforcement officer of the
United States," within the meaning of Section 2510 (7), Title 18,
United States Code; that is, an officer of the United States who
is empowered by law to conduct investigations of and to make
arrests for offenses enumerated in Title 18, United States Code,

40331

ion 2516.

3. I have been a Special Agent of the FBI for approximately eight and a half years, and I am currently assigned to the San Francisco Division. For the past six and a half years, I have been assigned to conduct investigations concerning the criminal activities of organized crime groups and the trafficking of illegal drugs, particularly Asian criminal enterprises. I have also been involved in investigations of numerous criminal offenses, including those offenses referred to in the paragraphs below.

A.    Personnel Assigned to this Investigation

4. This case is currently being investigated by agents of the Federal Bureau of Investigation ("FBI") and officers of the Oakland Police Department ("OPD"), agents of the California Department of Justice ("CDOJ"), United States Customs Service ("USCS') and the Drug Enforcement Administration ("DEA"). If authorized, monitoring of electronic and wire surveillance will be performed by FBI Special Agents, and or officers, or agents of the above named investigative agencies and employees or individuals operating under a contract with the government, all of whom will be acting under the supervision of investigative or law enforcement officers authorized to conduct the interception as defined by and pursuant to Title 18, section 2510. For the purpose of such wire communications, the CDOJ and OPD officers and agents will be deputized by the FBI as special Federal Officers. Physical custody of the tapes containing authorized intercepted communications will be maintained by the FBI.

2

40332

5. I have personally participated in the investigation of the offenses referred to in the following paragraphs. Based upon my personal participation in this investigation and from reports made to me by other Special Agents of the FBI, as well as other law enforcement officers and Agents, and reports of physical surveillance, reviews of telephone toll records and the results of court-ordered pen registers, I am familiar with the facts and circumstances of this investigation. The information set forth in this Affidavit reflects my personal knowledge or has been provided to me by FBI Special Agents, or other law enforcement officers and Agents, or confidential sources ("CS") of information with whom I have spoken, or whose reports I have read and reviewed. Since this Affidavit is being submitted for the limited purpose of securing authorization for the interception of wire and electronic communications, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are essential to establish the necessary foundation for an order authorizing the interception of wire and electronic communications.

B.      Application

6. This Affidavit is being submitted in support of an application which seeks an order authorizing the interception of wire and electronic communications of JOHN THAT LUONG and the others named below for a 30 day period pursuant to 18 U.S.C. Section 2516 to and from the cellular telephone bearing the number (916) 204-6889, which is a Cellular One cellular telephone subscribed to Katie Dam, 6125 Stockton Blvd., #69, Sacramento,

3

'ornia, but used by JOHN THAT LUONG.   We also request authorization pursuant to 18 U.S.C. Section 3123 and the All Writs Act to use an electronic serial number (ESN) reader, a device which is capable of gathering cellular telephone data that will assist in identifying the Mobile Identification Number(MIN)/Electronic Serial Number(ESN) combination of any cellular telephones used by JOHN THAT LUONG.

7.   Authorization for the interception of wire communications as requested herein concerns offenses enumerated in Title 18, United States Code, Section 2516; that is: Distribution and Possession of Controlled Substances With Intent to Distribute, to wit: heroin; (in violation of Title 21, United States Code, Section 841(a)(1)); Unlawful Use of a Communication Facility; (in violation of Title 21, United States Code, Section 843(b));  Conspiracy to commit and attempts to commit the aforementioned crimes; (in violation of Title 21, United States Code, Section 846) and Fraudulent Use of and Trafficking in counterfeit and unauthorized access devices; (in violation of Title 18, United States Code, Section 1029(a)).

8.  As a result of my personal participation in this investigation and information received from various sources, including conversations with agents of other local, state and federal agencies, extensive interviews of confidential sources, a review of taped consensual conversations between a subject of this investigation and cooperating witnesses, administrative subpoenas, intensive physical surveillance, reports submitted to me by other agents of the FBI and law enforcement, as well as my

4

40334

edge and experience, I allege the facts contained in the paragraphs below show that:

a.    There is probable cause to believe that: (1) JOHN THAT LUONG, also known as (aka) AH SING, THAT LUONG, AH SINH, THANH, DUONG, JOHN DAO, CUONG QUOC DAO, THANG, and JOHNNY, hereafter referred to as John That LUONG;(2) XUONG MANH QUACH, also known as (aka) AH CHEONG, MANSON QUACH, and SONG GAU, hereafter referred to as QUACH; (3) TUAN THANH NGUYEN, also known as (aka) MUOI, QUANG DINH PHAN and AH MUOI, hereafter referred to as Ah MUOI;(4) HUY CHI LUONG, also known as (aka) JIMMY LUONG, C. HUY LUONG, and JIM, hereafter referred to as Jimmy LUONG;  and others yet unknown, have been, are now and will continue to commit offenses against the United States as specified in paragraph 6 above;

b.    There is probable cause to believe the particular wire communications concerning the offenses described above, will be obtained through the interception of such communications to and from the cellular telephone bearing number (916) 204-6889 which is being used by JOHN THAT LUONG, and others yet unknown.

c.    There is probable cause to believe that the particular wire communications of the individuals identified in paragraph 8(a), concerning the above-described offenses, will be obtained through the interception of wire  communications authorization for which is herewith applied.  In particular, communications to be intercepted will concern:

(1)   the manner, scope and extent that JOHN THAT LUONG is using the cellular telephone bearing number (916) 204-

5

40335

6889;

(2)   the identification of other co-conspirators, aiders and abetters who are acting in concert with the subjects of this application, including the identity of as-yet unidentified sources of heroin ;

(3)   the manner in which these individuals use the identified communication devices to distribute controlled substances;

(4)   the dates, times, and places of heroin deliveries and shipments and payments;

(5)   the identification of communication facilities, including other cellular telephones, residential telephones, pay telephones, other digital pagers, and/or business telephones commonly used by the co-conspirators to facilitate controlled substance distribution activities;

(6)   numeric codes used by co-conspirators to identify themselves to each other, the quantities of drugs requested for purchase, and/or the prices for illicit drugs;

(7)   the manner in which these individuals acquire and use fraudulently cloned or activated cellular telephones;

(8)   locations where the subjects and co-conspirators are storing narcotics;

(9)   identification of assets being acquired by subjects and co-conspirators through the sale of narcotics; and

(10)  the precise nature and scope of the illegal activities.   In addition, the communications are expected to constitute admissible evidence of the commission of the above

6

40336

1 enumerated offenses and proof beyond a reasonable doubt of the

2 intent of each participant to join the conspiracy and to

3 participate willingly.

4

5    d.  There is probable cause to believe that JOHN THAT

LUONG uses numerous cellular telephones (to include fraudulently

6 cloned cellular telephones) and pagers, and that JOHN THAT LUONG

7 is presently using cellular telephone number (916) 204-6889 in

8 connection with the commission and attempted commission of the

9 offenses described above.

10    9.  Normal investigative procedures have been tried and

11 failed, reasonably appear to be unlikely to reveal the full scope

12 of the unlawful activities, the roles of the individuals

13 involved, or the identities of the other participants, or if

14 tried, are too dangerous to employ.  The investigative techniques

15 tried and failed and the efforts of law enforcement thus far are

16 outlined throughout this affidavit.  A more detailed explanation

17 of the investigative procedures which have been tried, and have

18 failed or reasonably appear unlikely to succeed if tried is

19 contained herein and is set forth below. (see Section VI, <u>infra.)</u>

20 II.  WIRE/ELECTRONIC COMMUNICATIONS TO BE INTERCEPTED

21

22    10.   Investigation as described herein shows that JOHN

THAT LUONG uses numerous cellular telephones, and that JOHN THAT

23 LUONG is presently using cellular telephone number (916) 204-

24 6889, which according to CELLULAR ONE cellular telephone company

25 is subscribed to by Katie Dam, 6125 Stockton Blvd., #69,

26 Sacramento, California.  In your affiant's experience, narcotics

dealers often alternate the communication devices which they

7

carry and use in order to thwart law enforcement efforts to develop evidence of their illegal activities. In addition, they often lease these devices in names other than their own for the same purposes. A complete description of the various cellular telephones and pagers used by JOHN THAT LUONG is contained in Section IV(C), of this Affidavit. Therefore, we request authorization pursuant to 18 United States Code, Section 2518(11)(b) to intercept the wire communications over cellular telephone number (916) 204-6889 which is being used by JOHN THAT LUONG.

11. I have been informed by other law enforcement personnel who are familiar with the applicable telephone technology that a "portable cellular telephone" (or a "mobile telephone") can be used both within a vehicle and outside a vehicle through the use of a portable battery pack. The cellular telephone system divides the State of California into many small coverage areas, which are referred to as "cells". As a vehicle in which a portable cellular telephone is located, or the cellular telephone itself is moved from one cell to another, transmitters within each cell and a master switching network permit "wire communications" to be completed. The cellular phones which JOHN THAT LUONG uses have been found to be cloned, which involves the fraudulent duplication of a legitimate subscriber's Mobile Identification Number (MIN) (the telephone number) and Electronic Serial Number (ESN), which is normally unique to a particular cellular phone. Investigation described herein shows that JOHN THAT LUONG frequently changes the MIN/ESN of the cellular phone

8

which he is using. Based on the information detailed herein, it is your affiant's belief that JOHN THAT LUONG is doing this to thwart and circumvent electronic surveillance. Therefore, your affiant is seeking authorization to intercept the cellular telephone used by JOHN THAT LUONG to accomplish this purpose.

12. Because of the mobility of portable cellular telephones, pursuant to Title 18, United States Code, Section 2518(3), authorization is requested for interception of wire communications to and from cellular telephone number (916) 204-6889 within the Northern District of California, and outside this jurisdiction, but within the United States. In addition, it is requested that background conversations, in the vicinity of the cellular phone being utilized by JOHN THAT LUONG, which at present is cellular telephone number (916) 204-6889, while it is off the hook or otherwise in use, also be permitted to be intercepted.

13. In connection with the telecommunications company which provides service for the cellular phone utilized by JOHN THAT LUONG, all interceptions over the telephone will automatically take place in San Francisco, California, regardless of where the telephone calls are placed to or from. Accordingly, all interceptions will first be heard in the Northern District of California. All monitoring of wire communications currently being sought in this Affidavit will be minimized in accordance with Chapter 119 of Title 18, United States Code.

III. SUBJECTS OF THE INVESTIGATION

14. Biographical data and criminal histories with respect

9

to the individuals who have been identified as subjects of this investigation and potential interceptees are listed as follows:

(a) Name: JOHN THAT LUONG

      Alias: That Luong, Ah Sing, Ah Sinh, Thanh, Johnny, Duong, John Dao, Cuong Quoc Dao, Thang

      DOB: December 16, 1971

      Sex: Male

      Race: Asian

      Height: 5 Ft. 6 In.

      Weight: 165 lbs.

      Hair: Black

      Eyes: Brown

      California Drivers License #: A4951174

      Pager Number: (916) 951-1722

      Arrest History: No arrest record found but a no bail warrant is outstanding on Luong (See paragraph 33).

(b) Name: XUONG MANH QUACH

      Alias: Ah Cheong, Manson Quach, Song Gau

      DOB: 3/2/69

      Sex: Male

      Race: Asian

      Height: 5 Ft. 10 In.

      Weight: 160 lb.

      Hair: Black

      Eyes: Brown

      California Drivers License #: A5004536

      Arrest History: 1990- Credit Card Forger,; 1991-

10

40340

Possession of Cocaine for the Purpose of Trafficking;

1995-Possession of Heroin for Sale.

(c)  Name: TUAN THANH NGUYEN

Alias: Ah Muoi, Muoi, Quang Dinh Phan

DOB: April 2, 1970

Sex: Male

Race: Asian

Height: 5 Ft. 6 In.

Weight: 122 lb.

Hair: Black

Eyes: Brown

California Drivers License #: A1001724

Arrest History: 1992- Burglary; 1993- Attempted

Kidnapping; 1994-Conspiracy to Distribute Heroin.

(d)  Name: HUY CHI LUONG

Alias: Jimmy Luong, C. Huy Luong, Jim

DOB: 10/25/68

Sex: Male

Race: Asian

Height: 5 Ft. 8 In.

Weight: 130 lbs.

Hair: Black

Eyes: Brown

California Driver's License#: C4917778

Arrest History:  July 3, 1991: Arrested for conspiracy

to distribute heroin- acquitted of charges.

11

40341

IV. FACTS AND CIRCUMSTANCES

A. Confidential Sources[1]

15. **Confidential Source 1 (CS-1)**: CS-1 began providing information to FBI Special Agent Nelson Low during the summer of 1994 following his arrest on drug charges. CS-1 has plead guilty to the drug charges and is currently awaiting sentencing. The sentencing for CS-1's drug conviction has been held in abeyance at this time due to his current cooperation with law enforcement. CS-1 has received money from the FBI for expenses incurred while assisting in law enforcement investigations. The information provided by CS-1 has proven to be reliable and has been corroborated by independent sources. In addition, the information which CS-1 has provided has been investigated, verified and determined to be highly accurate to the best of the source's knowledge.

16. **Confidential source 2 (CS-2)**: CS-2 has provided very reliable information to the FBI since June, 1993. CS-2 is unwilling to testify in this matter but has provided highly reliable information which has been independently verified through further investigation. CS-2 also refuses to allow his identity as an informant to be revealed. CS-2 has no criminal record. CS-2 advised that LUONG, who CS-2 knows as "AH SING" was from California and that his associates in Boston were Ah Muoi, Tan Ngo, and Phong Ly. CS-2 has met with LUONG in Boston and

---

[1] In this Affidavit, I will refer to all informants by the pronoun "he" and possessive "his", regardless of the informant's true gender to avoid as much as possible revealing the informant's identity.

12

knows him to be involved in the distribution of heroin. LUONG provided CS-2 with his pager number (617) 263-9006. CS-2 advised that LUONG's girlfriend or wife is Korean. CS-2 advised that LUONG and Phong Thu LY, were close associates. LY was murdered in Boston Chinatown on August 27, 1994, and his murder remains unsolved. Independent investigation by Boston FBI shows that Ly's business partner and girlfriend, Rui Zhen LIN, aka Jenny Lin, was the subscriber to a cellular telephone (617) 775-1780, which was utilized by LY. A review of toll records for (617) 775-1780 for the period 7/11/94 to 8/11/94 reflects 33 calls to LUONG's sky pager (800) 505-2905, and 3 calls to LUONG's Boston pager (617) 263-9006. On June 8, 1995, CS-2 identified a photograph of John That Luong as being identical to the person known to CS-2 as "Ah Sing".

17. **Confidential Source 3 (CS-3)**: On August 25, 1993, Special Agent Timothy C. Haught interviewed CS-3. CS-3 told SA Haught about an individual named SIN (determined to be the same as LUONG based on the information provided) who is a half Chinese/Vietnamese male providing 50 to 100 fraudulent credit cards at a time to Tri Thanh Nguyen. NGUYEN is currently incarcerated for alien smuggling. According to CS-3 and FBI investigation, Nguyen is involved in the sale of firearms and narcotics, counterfeiting, and alien smuggling. According to CS-3, an individual by the name Ah Sing (LUONG), is the supplier of China White heroin to Nguyen. LUONG's American name is Johnny and his Vietnamese name is THANH. CS-3 stated that SIN's "brother" is from the Philadelphia area and like LUONG , was

13

40343

previously from the San Francisco/Daly City area. LUONG was living in Sacramento, California in 1993, and had numerous gang members under his leadership in San Jose, Los Angeles, San Francisco, Philadelphia, and Boston. According to CS-3, two of LUONG's underlings are Cuong Tran and Ah Muoi. CS-3 also knows of LUONG's involvement in the distribution of counterfeit money, fake I.D.'s, and fraudulent credit cards. LUONG's right hand man is AH MUOI. AH MUOI insulates LUONG from the lower level street crime, and from the risk of prosecution. CS-3 is aware that LUONG's gang has access to guns, grenades and silencers, and has personally seen these individuals with grenades. CS-3 stated that LUONG's heroin is transported to the Toronto, Canada area and is then sent into the United States. LUONG is also involved in cocaine distribution and obtains his cocaine through individuals in Colombia. CS-3 has not been available for a reinterview since the initial meeting with SA Haught. In the initial interview, CS-3 indicated an unwillingness to testify due to a death threat against CS-3 by this same group. Independent investigation has corroborated the information from CS-3 and based on the description given by CS-3, the person referred to as Ah Sing is believed to be LUONG. In addition it has been determined through current investigation that LUONG continues to operate essentially the same organization which CS-3 has described.

　　　　18. **Confidential Source 4 (CS-4)**: CS-4 has provided information to the FBI since 1993 following his arrest on drug charges. CS-4 has pled guilty and is currently awaiting

14

sentencing.  The sentencing for CS-4's drug conviction has been held in abeyance at this time due to his cooperation with law enforcement.  CS-4 has received money from the FBI for expenses incurred while assisting in law enforcement investigations.  CS-4's information has been found to be accurate and independently verifiable.  CS-4 has been responsible for the indictment and arrests of at least one individual involved in the distribution of heroin.  CS-4 has recently been involved in the negotiations to open a heroin market in Philadelphia by LUONG.  CS-4 has been in recent contact with a known heroin drug associate of LUONG by the name Sau Hung YEUNG aka Fuk Chow HOANG.  Although CS-4 has first-hand knowledge of some of LUONG's criminal activities, and is willing to testify, he has not been able to learn the full extent of this groups operations nor the identity of LUONG's heroin supplier.

19.  **Confidential Source 5 (CS-5)**: CS-5 has provided highly reliable information to the FBI since 1993.  CS-5 has limited first-hand knowledge of the criminal activities of LUONG and his confederates.  CS-5 is unwilling to testify at this time and is unwilling for his identity to be revealed.  CS-5 has a criminal record however his cooperation with law enforcement is not to avoid any pending or anticipated charges.  CS-5 has been paid by the FBI for expenses.  The information from CS-5 has been independently verified and has been found to be very accurate.

20.  **Confidential Source 6 (CS-6)**: CS-6 has provided reliable information over an eight month period during 1994 and 1995 to the Boston Office of the FBI. CS-6 is unwilling to

15

40345

testify and is not available for further interviews. The information provided by CS-6 has led to the arrest of two individuals for a murder which was committed in 1994. The information from CS-6 has been independently corroborated and verified. CS-6 has a lengthy arrest history however he is not cooperating with law enforcement to avoid any pending or anticipated charges. CS-6 has provided the following information regarding the criminal activities of LUONG, and his criminal associates:

21. CS-6 knows that LUONG was from San Francisco and that he controls gang members in San Francisco and Philadelphia. CS-6 has met with LUONG and 4 of his "workers"; who LUONG brought with him to Boston. The "workers" were known as "Tung" (later identified as Tung Thanh Trinh, DOB: 12/15/64) , "Thanh", "UC" ( gave his name as Tung Nguyen when arrested by Canadian authorities for heroin importation), and "Jimmy". All four "workers" were involved in the sale of heroin for the LUONG organization.

22. In January, 1995, CS-6 advised that two of LUONG's Boston associates, Tung and UC, had been arrested on drug charges. Investigation shows that on December 16, 1994, "Tung" was arrested in Boston for heroin possession, and identified himself upon arrest as Viet Nguyen, DOB: 5/8/69. He subsequently was identified as Tung Thanh TRINH, DOB: 12/15/64, through a comparison of fingerprint arrest records. He has since been released and is believed to have departed Boston for San Francisco. In addition, CS-6 believes "UC" was arrested in

16

40346

Canada. According to Canadian authorities, one individual arrested for heroin importation, under the name Tung Nguyen, was from the Philadelphia area.

23. CS-6 further stated that in January, 1995, LUONG appeared to have left the Boston area, and was thought to have returned to California. According to CS-6, an individual by the name AH MUOI (believed by the FBI to be Tuan Thanh Nguyen) was LUONG's closest associate. AH MUOI is believed to have moved from Boston to California in March, 1995. Court records show that AH MUOI was released from custody on January 7, 1995, following a directed verdict of not guilty. He had been arrested by DEA-Boston on drug charges in August, 1994.

24. **Confidential Source 7 (CS-7)**: On April 6, 1995, San Francisco Police Sergeant Joe McKenna interviewed CS-7[2] following CS-7's arrest for the possession of 3 ounces of Heroin. CS-7 indicated his willingness to cooperate with law enforcement but is unwilling to testify. Although CS-7 is listed as a DEA informant, investigation has shown that CS-7 continues to deal in heroin without advising the DEA. For example, since he has agreed to cooperate, CS-7 has been observed by FBI and DEA agents negotiating for the purchase of heroin and its distribution. Pen registers reflect that CS-7 continues to have close contact with LUONG without reporting these contacts to DEA agents. The information provided by CS-7 in this Affidavit has been proven

---

[2]CS-7 has been identified in this Affidavit as a possible interceptee, Xuong Manh Quach. CS-7 has continued to be involved in drug transactions without the consent of law enforcement even during his period of cooperation.

17

40347

reliable to the extent it has been corroborated by independent sources. CS-7 has been one of the sources of information for identifying the various cloned cellular telephones being used by LUONG.

25. During debriefings with law enforcement, CS-7 advised that the source of the heroin was an individual by the name "Ah Sing". When shown a series of photographs, CS-7 selected a known photograph of John That LUONG and identified him as the individual he knew as "Ah Sing". CS-7 stated that he would be able to purchase heroin from LUONG, but that it would be difficult to negotiate the purchase of drugs at that time since he (CS-7) still owed LUONG for a previous four ounces of heroin.

26. On April 17, 1995, under the direction of SFPD Sergeant McKenna, CS-7 placed a consensually recorded telephone call to LUONG to arrange the payment of the drug debt owed by CS-7 to LUONG.(This transaction took place on April 18, 1995 and is described in detail in paragraph 51, below.) In addition, CS-7 attempted to introduce an undercover agent to LUONG for the purpose of paying the drug debt and to purchase an additional amount of heroin. During the negotiation phase of the drug payment, LUONG indicated that he did not want to meet anyone "new", and the introduction of an undercover agent was unsuccessful. CS-7 indicated that it was unlikely that LUONG would sell the heroin directly to an undercover agent without CS-7 acting as a broker for the transaction. On April 18, 1995, a DEA undercover agent was present at the initial meeting between LUONG and CS-7, but was excluded by LUONG from witnessing the

18

actual pay-off.

27. CS-7 said that LUONG is extremely aware of perceived law enforcement surveillance, and will be using a great deal of caution in future dealings. CS-7 stated that LUONG has two associates in San Francisco, HOANG (identified as LE, Hoang Ai) and MUOI (identified as NGUYEN, Tuan Thanh).

28. In May, 1995, CS-7 told CS-1 and CS-2 that LUONG was currently "laying low" (maintaining a low profile) since a courier was arrested recently with one of his heroin shipments. CS-7 believes that LUONG has the heroin flown into San Francisco from the East Coast of the United States. LUONG speaks English, Vietnamese, and Cantonese-Chinese.

29. On May 5, 1995, CS-7 told DEA agents that he met with LUONG at a night club in San Francisco. LUONG appeared to be meeting with Asian males from New York. CS-7 spoke to LUONG about ordering a unit of heroin, and requested a sample. LUONG told CS-7 that it was the same stuff he had previously supplied to CS-7. LUONG stated that when he lived in New York, he was capable of selling ten units of heroin a month. According to CS-7, at the time of the May 5th meeting, LUONG was carrying the same pager (916) 951-1722 and the same cellular telephone (916) 203-6688 that CS-7 had previously provided to SFPD.

30. In June, 1995, CS-7 attempted to broker a drug transaction under the direction of law enforcement. The portions of this transaction in which CS-7 operated under the control of law enforcement were fully corroborated through recorded conversations, physical surveillance and the placement of

19

40349

undercover agents.

B. Prior Investigation Involving LUONG

31. JOHN THAT LUONG[3], also known as Ah Sing is presently the leader of a large scale Vietnamese-Chinese heroin organization that is closely aligned with Vietnamese street gangs throughout the United States. LUONG's organization reportedly has international connections and works closely with high-echelon Asian Organized Crime figures in San Francisco, Los Angeles, New York, Boston, and Philadelphia. LUONG is involved in a variety of criminal activities to include firearm sales, alien smuggling, narcotics importation and distribution (Southeast Asian Heroin and Cocaine from Colombia), counterfeit U.S. currency, credit card fraud, money laundering and the fraudulent use of unauthorized access devices (cloned cellular telephones).

32. LUONG has been the subject of investigation by numerous law enforcement agencies across the country since 1990. LUONG has used a number of individuals to assist his criminal enterprise which spans the United States. Until recently, LUONG's true identity has been a mystery due to his own efforts to conceal it from law enforcement. LUONG has used fraudulent identification documents, several aliases, and elusive actions to avoid detection and identification. A consolidated effort by numerous law enforcement agencies across the U.S. has succeeded in positively identifying LUONG and his wide spread criminal

---

[3]In the facts and circumstances section, all references to LUONG mean JOHN THAT LUONG unless preceded by a different first name. LUONG will also be refered to as Ah Sing in some portions of the facts and circumstances.

40350

activities. This overview is a composite of information gathered by the various federal, state, and local law enforcement officers who are working this investigation. The details obtained from various prior investigations, as well as the current investigation follow:

## 1) Sacramento Gang Activity

33. On October 6, 1990, the Sacramento Police Department (SPD) investigated the report of a possible armed battle between two rival Asian gangs. The SPD established surveillance at the pre-planned meeting site and observed two vehicles containing previously identified Asian gang members in the general vicinity. Shortly thereafter, SPD executed two separate traffic stops on the vehicles. The first stop yielded three subjects and the recovery of a loaded .45 caliber semi-automatic handgun. The traffic stop on the second vehicle was preceded by a high speed pursuit and the eventual arrest of one subject and the recovery of a 9mm semi-automatic handgun. The vehicle's second occupant managed to elude the police on foot. Based on later interviews with the driver of the vehicle, the individual who eluded police officers was identified as John Luong, California Drivers License Number A4951174. A no bail warrant is still outstanding for LUONG (aka JOHN THAT LUONG).

## 2) INS Alien Smuggling Investigation

34. On May 24, 1993, the "Pai Sheng", a freighter bearing Honduran registry was seized at San Francisco, California. This ship carried approximately 270 illegal aliens. The "Pai Sheng" docked at an old Coast Guard pier and off loaded its human cargo.

21

40351

The illegal aliens and a lone land transporter from San Jose, California was arrested during the off-loading. Further investigation by FBI and the Immigration and Naturalization Service (INS) at San Francisco identified a significant Vietnamese smuggling group believed to be responsible for the smuggling of illegal Chinese aliens into the United States. Through search warrants and arrests and interviews with confidential sources conducted by INS, it was determined that one of the individuals responsible for the "Pai Sheng" operation was LUONG.

### 3) Oakland Gang Activity

35. On June 4, 1993, LUONG and three associates were detained by the Oakland Police Department for suspicious behavior related to recent gang activity in the area. LUONG provided false identification under the name DAO, Cuong Quoc, CDL #U1021278. Upon further investigation, it was determined that CDL# U1021278 does belong to an individual by the name DAO, Cuong Quoc, but is not identical to the individual stopped on 6/4/93. The other three individuals stopped at that time were identified as NGUYEN, Lam Van, DOB: 3/13/70; PHAM, Phuong Tam, DOB: 6/14/62; and NGUYEN, Ngoc, DOB: 7/1/66. Lam Van NGUYEN (CII# A09007974) has an arrest record for receiving stolen property in 1989. PHAM, Phuong Tam has the following arrest record: 1984- Shooting into an occupied dwelling, extortion, and robbery; 1986-Armed robbery; 1988-Receiving Stolen Property; and 1992-Burglary and Assault with a firearm. LOUNG's false identification was not discovered until recently by investigating agencies. The

22

40352

photograph of LUONG taken during the investigative stop has been compared to surveillance photographs in Philadelphia, Sacramento, and San Francisco.   The comparison of the photos has been found to be identical to the individual known as AH SING (JOHN THAT LUONG) who is currently under investigation.

### 4) Liem Pham/LUONG Criminal Association

36.   On April 11, 1994, Liem PHAM[4], a close associate of LUONG, was arrested, by the United States Secret Service (USSS) in Boston, Massachusetts, for forgery, receiving stolen property and possession of a fraudulent driver's license.   The rental car utilized by PHAM upon his arrest was found to contain a counterfeit California driver's license, in the name of Ung LUONG but bearing the picture that looked like John That LUONG. According to INS reports, Ung LUONG is believed to be LUONG's brother.   In addition, the rental car was found to have been rented at Logan Airport utilizing a fraudulent credit card. Prior to the arrest of PHAM the USSS obtained bank surveillance photos which included photos that looked like LUONG and PHAM. PHAM was sentenced to a 6 month suspended sentence and 1 year probation in the East Boston District Court.

37.   In August, 1994, PHAM leased a vehicle utilized by LUONG in Philadelphia during the negotiation of a deal for counterfeit currency.

38.   According to CS-1, on November 14, 1994, PHAM was given

---

[4] Liem PHAM was arrested by the U.S. Secret Service-Boston under the name Bobby CHU and was arrested by U.S. Secret Service-New Orleans under the name Danny TRAN.

40353

a Honda automobile (taken as collateral for a gambling debt) and $10,000 in counterfeit currency prior to his traveling to California to purchase weapons. CS-1 owed a gambling debt to CS-7, and had give him the car as collateral for the debt. For unknown reasons PHAM departed California from a Los Angeles area airport and traveled to New Orleans. While in New Orleans, PHAM was arrested by the USSS in for possessing counterfeit currency and a cloned cellular telephone. In subsequent debriefings, CS-7 has admitted giving counterfeit currency to PHAM to purchase weapons to bring back to San Francisco. In November, 1994, CS-6 advised that a good friend of LUONG's had been arrested in New Orleans for passing fake money. The friend to whom LUONG referred is believed to be PHAM.

### 5) Philadelphia FBI Investigation

39. In February, 1994, CS-4 told special agents of the FBI about a group of individuals selling heroin for $70,000 a unit (700 grams). CS-4 identified those individuals as AH SING, AH MUOI and Fuk Chow HOANG. CS-4 has identified photographs of AH SING, AH MUOI and Fuk Chow HOANG to be LUONG, NGUYEN, and Sau Hung YEUNG. LUONG and AH MUOI travelled frequently between Boston, Philadelphia and San Francisco. CS-4 was provided with a contact number of (617) 782-9766 (subscribed to by LY, SANG, 28 Holton St., Allston, MA.) for LUONG. LUONG also provided CS-4 with pager number (617) 263-9006. CS-6 had previously advised that LUONG was carrying and using pager number (617) 263-9006 while in Boston, and that (617) 782-9766 was the telephone number LUONG used when he resided in Boston.

24

40354

40.   In the summer of 1994, CS-5 was told by LUONG that his friend, Jimmy Luong owns an import/export business and could be reached at telephone number (916) 688-1521 or facsimile number (916) 386-1247.  According to DEA reports, on July 3, 1991, HUY CHI LUONG, also known as Jimmy LUONG, was arrested by DEA, New York, for conspiracy to distribute heroin.  At the time of his arrest, Jimmy LUONG was driving a car containing 3 other Asian individuals who had just completed a sale of approximately two kilograms of heroin to a DEA source.  (Jimmy LUONG was acquitted at trial).  Subsequent to his arrest, Jimmy LUONG provided DEA with his residence address of 6939 Mesa Grande Court, Sacramento, California, telephone number (916) 383-2963.

41.   Pacific Bell Telephone subscriber information indicates that (916) 688-1521, now changed to (916) 689-1611, is subscribed to by Nhi LUONG at 8201 White Sands Way, Sacramento, California, and that (916) 383-2963 is subscribed to by Moui LAM, 6939 Mesa Grande Court, Sacramento, California.  According to INS records, LAM is Jimmy LUONG's mother, and Nhi Luong is LUONG's mother. The subscriber to (916) 386-1247 is Sacramento Occupational Resource Center (SORS), 5450-B Power Inn Road, Sacramento, California.  The Presidents of SORS are listed as Joseph Cantrelle, Sr. and Su Ying Plaskett, 2327 Dartmouth Place, El Dorado Hills, California.  A second company, United International Business and Import/Export Inc., 5450-C power Inn Road, Sacramento, California, listed as the registered agents Joseph Cantrelle, Sr., and Tu Tu Luong, 6939 Mesa Grande Court, Sacramento, California.  According to INS records, Tu Tu Luong is

25

40355

Jimmy Luong's father and that Cantrelle is related to the Luong family by marriage. The digital pager currently used by LUONG is subscribed to in the name Huy Chi LUONG at 6939 Mesa Grande, Sacramento, California.

42. On July 24, 1994, CS-4 conducted face-to-face negotiations with LUONG for the purchase of an ounce of heroin. The next day, LUONG told CS-4 that he would be getting a new shipment of heroin soon and that the quality of the heroin was better than the "double lion" brand[5]. On July 29, 1994, CS-4 attempted to contact LUONG on skypager (800) 505-2905. The pager call was returned by AH MUOI. This pager was seized from AH MUOI when he was arrested by DEA - Boston on August 18, 1994. CS-4 and AH MUOI discussed the purchase of an ounce of heroin. On August 3, 1994, CS-4 met LUONG to discuss a deal regarding counterfeit currency. During the meeting with LUONG, CS-4 observed LUONG traveling to the meeting in a white vehicle bearing a Massachusetts (MA) license plate containing the digits 531. Surveillance agents observed a white Mustang bearing MA. tag 531-AHE at the same location at which the meeting with CS-4 took place. The driver of the vehicle was identified by surveilling agents to be Ah Muoi (NGUYEN, Tuan), an associate of LUONG. The vehicle was found to be leased by Liem PHAM[6], 14198 Spring date Street, Westminster, California. The renter provided

---

[5] The "Double Lion" brand heroin is an extremely well-known and established trademark type of heroin from the Southeast Asian region.

[6] The connection between Liem Pham and LUONG is described in more detail in paragraph 36, above.

26

40356

California Drivers license #A8167429 and a visa Credit card bearing the name Linda Lam, and a secondary card holder name of Liem Pham.   The driver's license used by the renter appears to be a counterfeit since CDL#a8167429 is identifiable with an Ida Mandrell, DOB:4/14/14, and not with Liem Pham.   During this same period, LUONG's associates were known to be staying at a Ramada Inn, Philadelphia.   Two rooms at the Ramada were found to be utilized by LUONG and his associates, and were rented under the name Un Suk Anderson (Believed to be LUONG's wife or girlfriend according to FBI and INS).

43.   On August 5, 1994, CS-4 met with AH MUOI, AH TUNG (identified through Philadelphia FBI investigation to be Tung Phan Nguyen) and "Tony" (Last Name Unknown) and purchased 1 ounce of heroin for $4000 from AH MUOI.   AH MUOI told CS-4 that AH SING (LUONG) could not be present for this deal.   On August 25, 1994, LUONG contacted CS-4 and gave him an additional pager number (617) 263-9006.   LUONG also told CS-4 that AH MUOI was arrested in Boston for the sale of a 1/2 unit of heroin, and for CS-4 to be careful.   On August 30, 1994, CS-4 received a page from LUONG. CS-4 called LUONG at (617) 782-9766 (subscribed to by Sang LY, used by LUONG).   LUONG told CS-4 that AH MUOI was being held without bail in Boston.   DEA records confirm that in August, 1994, Tuan Thanh NGUYEN, aka Ah Muoi was arrested for the distribution of heroin.   During the August 5, 1994 purchase of one ounce of heroin from Tuan Thanh NGUYEN, by CS-4, NGUYEN was observed driving a rental vehicle bearing Massachusetts license 171AGC.   The name on the rental agreement was Rui Z. LIN, 45

27

40357

Wayland Street, Quincy, MA., telephone number (617) 338-6695.
During the August, 1994 deal, NGUYEN stayed at the Ramada Suites
in Chinatown, Philadelphia. Records for NGUYEN's stay at the
Ramada Suites indicated calls to (617) 338-6695 on August 4,
1994.

## C. Current LUONG Investigation

44. The current investigation of LUONG involves the
distribution of heroin by LUONG and his associates. In this
investigation, we have attempted for over 9 months to gather
evidence to support a prosecution of LUONG and his criminal
associates. Our investigation to date has produced the following
information:

### 1) 1/2 Unit Heroin Purchase on 2/10/95

#### a. February 1, 1995

45. On February 1, 1995, CS-1 was introduced to an
individual by the name Ah Hoang (Subsequently identified as HOANG
AI LE) for the purpose of transacting a heroin transaction. CS-1
was told by HOANG LE that the heroin was coming from "AH SING"
(LUONG). CS-1 inquired whether Ah Hoang was working for LUONG,
to which Ah Hoang replied that he was a "partner" with LUONG.

#### b. February 3, 1995

46. On February 3, 1995, during the negotiations for the
purchase of 1/2 unit of heroin through Manson QUACH[7], CS-1 was

---

[7]The broker in this transaction was Manson Quach, also
referred to in this Affidavit as CS-7, prior to his arrest and
subsequent cooperation with law enforcement. In debriefings with
law enforcement officers, CS-7 later corroborated the events as
reported by CS-1.

28

asked by LUONG to make an $8000 deposit for the 1/2 unit and was

offered, as security, a "limousine car", to include the title,

which belonged to LUONG. CS-1 was told by QUACH that LUONG was

from Philadelphia. CS-1 declined to make a deposit. It was

suggested that a "three-way conference call" be held to include

LUONG. CS-1 was unable to participate in a three-way

conversation in that CS-1 was placing and recording the calls

from an FBI number which could not be revealed. CS-1 was told

that the heroin was not in San Francisco but had to be brought

out from the "East" (East Coast) and a deposit was necessary to

guarantee its availability. CS-1 was told again that the product

(heroin) was from LUONG, and that LUONG was in Sacramento. Pen

register information revealed that LUONG's pager (800) 709-8276

was contacted by QUACH at the same time the above negotiations

were being held. A review of telephone toll records for

telephone number (916) 393-8236, confirms that the number is

subscribed to by SY LUONG, 8000 Rush River Drive, Apt. 226,

Sacramento, California. (Investigation has determined that

telephone number (916) 393-8236 is utilized by LUONG, and that SY

LUONG is LUONG's sister.)

c. The Evening of 2/9/95 and Morning of 2/10/95

47. On February 9, 1995, CS-1 was contacted by QUACH and

asked to call LUONG immediately on telephone number (713) 857-

5462 (Investigation determined that this number was from a cloned

phone out of Houston, Texas). CS-1 attempted to contact LUONG on

the number given. The call was not received by LUONG because it

appears that the legitimate subscriber answered the call instead

29

of LUONG.  An investigator experienced in the cloning of cellular phones advised that it is normal for the user of a clone phone to only activate the phone when they are aware of an upcoming incoming call or to make an outgoing call.  The clone phone user is usually alerted to activate their phone by receiving a page from the party attempting to speak to the user.  The user of a clone phone usually does not maintain activation of a clone phone at all times or for any great duration of time for fear of discovery.  When CS-1 was unsuccessful in contacting LUONG, QUACH was recontacted and informed CS-1 that LUONG needed money because the couriers who had brought the "stuff" (heroin) needed money to return to New York.  CS-1 was told to meet LUONG to discuss the deal.  CS-1 went to a club and observed LUONG and an Asian female.  LUONG told CS-1 that he was tired after the long drive from Sacramento, and it was agreed that the (heroin) deal would be completed the next day (2/10/95).  Prior to entering the meeting with LUONG, CS-1 noticed a light colored Toyota, parked in the parking lot.  The occupants of the Toyota included HOANG LE and two associates.  CS-1 advised that LUONG's pregnant wife was the Asian female who had accompanied LUONG to the meeting. In the early morning of 2/10/95, CS-1 accompanied the QUACH to another location in order to see the "stuff" (heroin), prior to the completion of the transaction.  QUACH appeared to make several pager calls to unknown numbers.  A review of pen register data obtained for 2/10/95, from QUACH's telephone revealed a total of four calls to LUONG's pager (800) 709-8276 and two calls to AH HOANG's pager (415) 560-3902.  A check of incoming calls

40360

revealed one call from a cellular phone containing a Houston, Texas telephone number (713) 857-5462. Investigation has determined that during this two day period, LUONG was using a cloned telephone with numbers originating out of the Houston, Texas area. A short time after the above described calls were made, LUONG, HOANG LE, and an unknown associate arrived at CS-1's location in the same light colored Toyota which was observed earlier in the evening. HOANG LE carried a video cassette recorder (VCR) box into the room and opened the box which contained a plastic wrapped package. LE then proceeded to remove/cut off a corner of the plastic wrapped package and offered it to CS-1. CS-1 observed that the contents of the package appeared to be a white powdery substance, believed to be heroin. CS-1 declined to take the cut portion until money for payment was available. Soon thereafter, HOANG LE, LUONG and the associate departed the meeting. This meeting took place in San Francisco.

### d. The Evening of 2/10/95

48. At approximately 3 p.m., CS-1 and an FBI/UCA traveled to QUACH's home to obtain two ounces of heroin as a sample. CS-1 was searched by agents of the FBI prior to entering QUACH's home to obtain the sample. CS-1 obtained a latex glove which contained a paper bindle and a plastic wrapped package containing a white powdery substance, from QUACH. CS-1 returned to the vehicle in which the FBI/UCA was waiting and handed the glove and its contents and the plastic wrapped package containing a white powdery substance to the FBI/UCA. CS-1 was then given $8000 by

31

40361

the FBI/UCA, which CS-1 immediately brought to QUACH.

49. Between 4:29 pm and 4:55 pm, CS-1 called QUACH on 5 occasions. Twice when CS-1 called QUACH to ask whether delivery of the remaining balance of the 1/2 unit had been delivered, QUACH answered the phone "AH SING?", and upon learning that it was CS-1 calling, replied that the delivery would occur shortly. A review of pen register records of QUACH's phone revealed that QUACH had paged LUONG at telephone number (800)709-8276 at 4:31 pm and HOANG LE at telephone number (415) 560-3902 at 4:33 pm. Surveillance at QUACH's house noted that at 4:50 pm, a red BMW (2PKM803) stopped in front of that location and an Asian male briefly exited the BMW carrying a package to the house. A few minutes later, the Asian male returned to the vehicle. The red BMW was surveilled to 201 Waterville Ave., San Francisco, California. At approximately 4:55 pm, CS-1 again called QUACH to ask about the delivery of the heroin, at which time QUACH replied that he had it (heroin). At approximately 5:03 pm, CS-1 returned to QUACH's residence and was directed by QUACH to take a VCR box with a package taped inside. The VCR box was the same or similar to the VCR box viewed by CS-1 in the early morning hours of 2/10/95, in the possession of HOANG LE. CS-1 departed from QUACH's residence and delivered the package containing the balance of the 1/2 unit of heroin to the FBI/UCA, and was then provided with $30,500 cash to take back to QUACH. CS-1 returned to QUACH's residence and handed the money to QUACH. While returning to the car, a light colored Toyota driven by an individual recognized by CS-1 to be LUONG drove alongside CS-1.

32

40362

The passenger recognized by CS-1 to be HOANG LE asked CS-1 "is it okay?", to which CS-1 replied, "yeah". The light colored Toyota then drove off. Surveillance determined that the light colored Toyota bore California license number 3KJF747, registered to SY LUONG, 9201 White Sands Way, Sacramento, California. A few minutes later, that same vehicle was observed in the vicinity of QUACH's house and the passenger was observed exiting the vehicle and entering the house. A few minutes later, the passenger returned to the vehicle, and it was seen departing the area. Surveillance followed the vehicle to 201 Waterville Ave, San Francisco, California. The passenger was identified by surveilling agents to be HOANG LE. This drug transaction took place in San Francisco.

50. The drug transaction described above yielded 1/2 unit of heroin (350 grams) which, according to the Drug Enforcement Regional Lab, was of a 90% purity level.

### 2) 4/18/95 Payment of Drug Debt

51. On April 18, 1995, at approximately 6:50 pm, LUONG and his girlfriend or wife (a Korean female) met with CS-7 and a DEA/UCA at a restaurant in San Francisco, California. The meeting had been arranged the night before, in conversations between CS-7 and LUONG, to pay a drug debt owed by CS-7 to LUONG.

52. Upon first entering the restaurant, LUONG left his cellular telephone on the bar and continued to walk with his girlfriend/wife towards the restrooms. At that time, CS-7 picked up the cellular telephone and retrieved the telephone number (916) 203-6688, as witnessed by the DEA/UCA. LUONG and his

40363