1   MELINDA HAAG (CABN 132612)
    United States Attorney
2
    J. DOUGLAS WILSON (DCBN 412811)
3   Chief, Criminal Division

4   W.S. WILSON LEUNG (CABN 190939
    Assistant United States Attorney
5
          450 Golden Gate Avenue, Box 36055
6         San Francisco, California 94102-3495
          Telephone: (415) 436-6753
7         FAX: (415) 436-6758
          Wilson.leung@usdoj.gov
8
    Attorneys for United States of America
9

10                    UNITED STATES DISTRICT COURT

11                   NORTHERN DISTRICT OF CALIFORNIA

12                      SAN FRANCISCO DIVISION

13
    UNITED STATES OF AMERICA,          )   No. 96-CR-00094-JSW
14                                      )
              Plaintiff,                )   MEMORANDUM IN OPPOSITION TO
15                                      )   PETITIONER'S AMENDED PETITION TO
         v.                             )   VACATE, SET ASIDE, OR CORRECT A
16                                      )   SENTENCE PURSUANT TO 28 U.S.C. § 2255
    JOHN THAT LUONG,                    )
17                                      )
              Defendant.                )
18   _____)

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................1

II.     RELEVANT PROCEDURAL HISTORY ...........................................................1

III.    DISCUSSION .....................................................................................................5

        A.    General Principles Governing Adjudication of a § 2255 Motion .............5

        B.    Applicable Law Regarding Ineffective Assistance of Counsel ...............5

        C.    Petitioner's Motion Under § 2255 Should Be Denied .............................6

              1.    Trial counsel was not ineffective for failing to challenge the grand and petit jury selection procedure (Claims I & III) ...........................................6

              2.    Trial counsel was not ineffective for failing to object to the prosecutor's alleged misconduct (Claim IX) .........................................10

              3.    Trial counsel was not ineffective for failing to interview and present witnesses in defendant's defense (Claim XI) .........................................12

                    (a)    Actual Innocence ................................................................12

                    (b)    Ineffective Assistance ........................................................14

              4.    Trial counsel was not ineffective for failing to object to the jury charge (Claim XII) .....................................................................................15

              5.    Appellate counsel was not ineffective for failing to identify and raise issues on appeal (Claim XIII) ................................................................16

                    (a)    Petitioner's § 924(c) sentences were properly imposed ............17

                    (b)    Neither trial counsel nor appellate counsel were ineffective ..................18

IV.     CONCLUSION..................................................................................................20

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Batson v. Kentucky*, 476 U.S. 79 (1986) ............................................................. 7, 8

*Bobby v. Van Hook*, 558 U.S. 4 (2009) ............................................................... 15

*Bousley v. United States*, 523 U.S. 614 (1998) ................................................... 5

*Brown v. Carey*, 2011 WL 5444251 (N.D. Cal. Nov. 9, 2011) ........................... 7

*Carriger v. Stewart*, 132 F.3d 463 (9th Cir. 1997) ............................................ 12, 13

*Chin v. Carey*, 160 F. App'x 633 (9th Cir. 2005) ............................................... 9

*Chin v. Runnels*, 343 F. Supp. 2d 891 (N.D. Cal. 2004) ................................... 9

*Deal v. United States*, 508 U.S. 129 (1993) ....................................................... 19

*Duren v. Missouri*, 439 U.S. 357 (1979) ............................................................ 8

*Gustave v. United States*, 627 F.2d 901 (9th Cir. 1980) ................................... 9, 10, 12

*Herrera v. Collins*, 506 U.S. 390 (1993) ........................................................... 12

*Hill v. Lockhart*, 474 U.S. 52 (1985) ................................................................. 6

*Jackson v. Calderon*, 211 F.3d 1148 (9th Cir. 2000) ........................................ 13

*James v. Borg*, 24 F.3d 20 (9th Cir. 1994) ........................................................ 7

*Lockhart v. Fretwell*, 506 U.S. 364 (1993) ....................................................... 6

*Lord v. Wood*, 184 F.3d 1083 (9th Cir. 1999) ................................................... 15

*Murray v. Schriro*, __ F.3d __, 2014 WL 997716 (9th Cir. Mar. 17, 2014) ...... 15

*Pelmer v. White*, 877 F.2d 1518 (11th Cir. 1989) ............................................. 16

*Pinkerton v. United States*, 328 U.S. 640 (1946) ............................................. 14, 18

*Powers v. Ohio*, 499 U.S. 400 (1991) ............................................................... 7

*Salinas v. United States*, 522 U.S. 52 (1997) ................................................... 19

*Strickland v. Washington*, 466 U.S. 668 (1984) ............................................... passim

*Sullivan v. DeLoach*, 459 F.3d 1097 (11th Cir. 2006) ...................................... 15

*Taylor v. Louisiana*, 419 U.S. 522 (1975) ........................................................ 8

*United States v. Beltran-Moreno*, 556 F.3d 913 (9th Cir. 2009) ...................... 19

*United States v. Benboe*, 157 F.3d 1181 (9th Cir. 1998) .................................. 17

*United States v. Berry*, 624 F.3d 1031 (9th Cir. 2010) ............................................................ 5

*United States v. Chambers*, 918 F.2d 1455 (9th Cir. 1990) ...................................................... 16

*United States v. Fontanilla*, 849 F.2d 1257 (9th Cir. 1988) ..................................................... 17

*United States v. Fry*, 322 F.3d 1198 (9th Cir. 2003) ................................................................. 5

*United States v. Jimenez Recio*, 537 U.S. 270 (2003) .............................................................. 19

*United States v. Lindsey*, 505 F. Supp. 2d 838 (D. Kan. 2007) ................................................. 9

*United States v. Lopez*, 2014 WL 820209 (M.D. Pa. Mar. 3, 2014) ............................... 7, 9, 10

*United States v. Luong*, 2006 WL 3825384 (9th Cir. Dec. 26, 2006) ............................ 2, 14, 17

*United States v. Luong*, 2009 WL 1393406 (E.D. Cal. May 15, 2009) ................................... 19

*United States v. Luong*, 471 F.3d 1107 (9th Cir. 2006) .............................................................. 3

*United States v. Luong*, 627 F.3d 1306 (9th Cir. 2010) ................................................ 3, 4, 14, 18

*United States v. Powell*, 2004 WL 1534176 (D. Kan. May 10, 2004) .................................... 10

*United States v. Simmons*, 923 F.2d 934 (2d Cir. 1991) ............................................................ 6

*United States v. Smith*, 924 F.2d 889 (9th Cir. 1991) .............................................................. 18

*United States v. Wilcox*, 640 F.2d 970 (9th Cir. 1981) ............................................................... 5

## FEDERAL STATUTES, RULES AND GUIDELINES

18 U.S.C. § 2 ......................................................................................................................... 1, 14

21 U.S.C. § 841(a)(1) ................................................................................................................. 1

21 U.S.C. § 843(b) ..................................................................................................................... 1

21 U.S.C. § 846 .......................................................................................................................... 1

18 U.S.C. § 924 .............................................................................................................. 17,1,19,3

18 U.S.C. § 1951 ..................................................................................................................... 15.1

18 U.S.C. § 1962 ......................................................................................................................... 1

18 U.S.C. § 3553 ...................................................................................................................... 3, 4

28 U.S.C. § 2255 ................................................................................................................. 1, 4, 5

U.S.S.G. 3B1.1(a) ..................................................................................................................... 19

# I.  INTRODUCTION

The Government respectfully submits this Memorandum in Opposition to defendant-petitioner John That Luong's motion to vacate, set aside, or correct a sentence, pursuant to Title 28, United States Code, Section 2255.  For the following reasons, the defendant's claims should be dismissed or denied on their merits without any hearing.

# II.      RELEVANT PROCEDURAL HISTORY

On March 24, 1998, defendant-petitioner John That Luong ("Petitioner") was charged in in a twenty-one count superseding indictment with the following twelve offenses:

1. Count One: Racketeering, in violation of 18 U.S.C. § 1962(c);

2. Count Two: Racketeering conspiracy, in violation of 18 U.S.C. § 1962(d);

3. Count Ten: Conspiracy to commit Hobbs Act robbery of Hokkins Systemation, in violation of 18 U.S.C. § 1951(a);

4. Count Eleven: Hobbs Act robbery of Hokkins Systemation, in violation of 18 U.S.C. § 1951(a) and 2;

5. Count Twelve: Using a firearm during or in relation to the Hokkins Systemation Hobbs Act robbery charged in Count Eleven, in violation 18 U.S.C. § 924(c)(1);

6. Count Thirteen: Conspiracy to commit Hobbs Act robbery of Aristocrat, Inc., in violation of 18 U.S.C. § 1951(a);

7. Count Fourteen: Hobbs Act robbery of Aristocrat, Inc., in violation of 18 U.S.C. § 1951(a) and 2;

8. Count Fifteen: Using a firearm during or in relation to the Aristocrat, Inc., Hobbs Act robbery charged in Count Fourteen, in violation 18 U.S.C. § 924(c)(1);

9. Count Sixteen: Conspiracy to distribute heroin, in violation of 21 U.S.C. § 846;

10. Count Seventeen: Distribution of heroin, in violation 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2;

11. Count Eighteen: Distribution of heroin, in violation 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2;

12. Count Nineteen: Use of telephone to facilitate distribution of heron, in violation of 21 U.S.C. § 843(b).

See Indictment, Docket 471.  These charges arose from Petitioner's role as one of the leaders of a racketeering enterprise — "The Company" — whose members robbed various computer chip manufacturers at gunpoint and distributed heroin.  See id.

On June 22, 2000, after a lengthy trial, a jury sitting in the Northern District of California convicted Petitioner of all charges except for one of the substantive heroin distribution counts.  See Docket 1259, 1260.  The Honorable Marilyn Hall Patel subsequently sentenced Petitioner to a term of imprisonment of 1,058 months.

Petitioner appealed, claiming that: (1) the evidence was insufficient to support his conviction; (2) the district court's jury instructions on the Hobbs Act robbery charges constructively amended the indictment; (3) the district court's failure to provide an "aiding and abetting" instruction required reversal of the robbery charges; (4) the jury found a single Hobbs Act robbery conspiracy instead of multiple Hobbs Act robbery conspiracies; (5) because the Hobbs At robbery-related charges must be reversed, the § 924(c) firearms related to those robbery charges must also be reversed; (6) the district court erred by failing to suppress evidence derived from wiretaps because the wiretap application failed to establish necessity for the wiretap; and (7) the district court erred by sentencing the defendant under a mandatory Sentencing Guidelines scheme, contrary to the Supreme Court's decisions in United States v. Booker and Blakely v. Washington.  See United States v. Luong, et al., Appellants' Joint Opening Brief, Nos. 01-10468-72, 01-10558, and 01-10563.

In an unpublished decision, the Ninth Circuit affirmed Petitioner's convictions on all charges.  See United States v. Luong, 2006 WL 3825384 (9th Cir. Dec. 26, 2006).  With respect to Petitioner's specific claim that the evidence was insufficient to support his conviction for the Aristocrat robbery-related charges, the Ninth Circuit explained:

> Sufficient evidence supported Luong's conviction of the Aristocrat counts even though there was no direct evidence that he specifically agreed to rob Aristocrat.  A rational jury could infer his agreement from the evidence that he was supervising the crew chief who executed the Aristocrat robbery, actively participated in the selection of the crew chief's next robbery target, and directed the crew chief during the time period when Aristocrat was robbed.

2006 WL 3825384, at *2.

The Court of Appeals also held that charging separate Hobbs Act robbery conspiracies was proper

1   because "each involved a distinct agreement to violate the statute," see id., and that the district court did

2   not err by denying Petitioner's motion to suppress wiretap evidence because the wiretap affidavit, even

3   with its shortcomings, still sufficed to establish the requisite necessity, see id. at *3.[1]  The Court of

4   Appeals, however, vacated Petitioner's sentence because he had been sentenced under a mandatory

5   Guidelines regime, and remanded his case for re-sentencing.  See id. at 646-47.

6          On remand in the district court, Petitioner argued that: (1) he should have be sentenced under 18

7   U.S.C. § 924(o) — which criminalized conspiring to violate § 924(c) and did not carry the mandatory

8   minimum sentence required by § 924(c) — because his § 924(c) convictions were not based on his

9   personal use of a firearm, but rather, on his participation in conspiracies in which firearms were used;

10  (2) he should have been sentenced for only one § 924(c) violation instead of two (the second conviction

11  carried a mandatory minimum consecutive sentence of 20 years' imprisonment) because the jury found

12  the existence of a single, overarching Hobbs Act robbery conspiracy; (3) he should have only been

13  sentenced for only one § 924(c) violation because the Government failed to specify which of the §

14  924(c) counts was the "second or subsequent" offense; (4) he should not have received the 5-year

15  sentence for the first § 924(c) violation because the statutory language precludes this sentence; (5) his §

16  924(c) convictions violated Apprendi v. New Jersey; and (6) § 924(c)'s mandatory minimum sentencing

17  scheme violated the general sentencing statute, 18 U.S.C. § 3553.  See United States v. Luong, 627 F.3d

18  1306, 1308 (9th Cir. 2010).  Judge Patel rejected these claims and re-sentenced Petitioner on June 12,

19  2009 to a term of imprisonment of 780 months, which included a consecutive term of 5 years'

20  imprisonment for the first § 924(c) violation and an additional consecutive term of 20 years'

21  imprisonment for the "second or subsequent" § 924(c) violation.  See Docket 1965.

22         Petitioner appealed, reiterating the arguments rejected by Judge Patel.  See Luong, 627 F.3d at

23  1308-09.  The Ninth Circuit affirmed Petitioner's sentence, declining to consider most of his claims

24  because they exceeded the mandate of the Court's remand for re-sentencing by challenging the validity

25

26         [1] In a separate, published opinion, the Ninth Circuit affirmed Judge Patel's decision not to
    suppress wiretap evidence against Petitioner based on Petitioner's jurisdictional challenge to the wiretap.

27  See United States v. Luong, 471 F.3d 1107 (9th Cir. 2006).  The Court of Appeals explained that, under
    the wiretap statute, interception could be authorized in the district where the communications would

28  "first be heard," even if the intercepted telephone was assigned an area code that corresponded to a
    location outside the district.  See 471 F.3d at 1109.

1   of his convictions — which had already been affirmed — and not his sentence.  See id. at 1311-12.  The

2   Court of Appeals, however, noted that Petitioner did present two proper sentencing claims.  The first

3   was that the statutory language of § 924(c) precluded "stacking" of § 924(c) sentences, i.e., precluded

4   him from receiving multiple consecutive sentences for multiple § 924(c) violations.  Petitioner, however,

5   withdrew this claim, conceding that he had based his argument on an "incorrect version" of the statute.

6   See id. at 1312.  The second claim was that the mandatory sentencing scheme of § 924(c) violated 18

7   U.S.C. § 3553, which the Ninth Circuit rejected, joining various other Courts of Appeals.

8          On September 27, 2012, Petitioner filed the present motion, under 28 U.S.C. § 2255, seeking to

9   vacate or set aside his sentence based on a variety of claims.  See Docket 2058.  On February 4, 2013,

10  Petitioner filed a clarification of his § 2255 motion.  See Docket 2082.  The Court subsequently assigned

11  counsel to Petitioner, and on November 27, 2013, counsel filed an amended memorandum in support of

12  Petitioner's § 2255 motion.  See Amended Petition (Docket 2124) (hereafter "Am. Pet.").[2]

13  Petitioner's Amended Petition withdraws seven of his original claims (Claims II, IV, V, VI, VII, VIII,

14  and X) and pursues the remaining six, most of which are premised on a claim of ineffective assistance of

15  counsel[3], to wit:

16       1.  CLAIM I – Trial counsel failed to challenge the grand jury selection process;

17       2.  CLAIM III – Trial counsel failed to object to the jury selection procedures;

18       3.  CLAIM IX – Trial counsel failed to object to the prosecutor's alleged misconduct;

19       4.  CLAIM XI – (1) Trial counsel failed to interview and present a witness in the defendant's

20           defense and (2) Petitioner has "new evidence" of his "actual innocence;"

21       5.  CLAIM XII – Trial counsel failed to object to the jury charge; and

22       6.  CLAIM XIII – (1) Appellate counsel failed to identify and raise obviously meritorious issues

23           on appeal and (2) Judge Patel erred by imposing multiple sentences under § 924(c).

24

25       [2] Counsel also filed a motion for discovery, on which the Court deferred ruling.  See Docket
    2135 (Jan. 27, 2014 Order).

26       [3] As part of Claim XIII, alleging ineffective assistance of appellate counsel, Petitioner now tries
27  to add an independent claim challenging Judge Patel's imposition of multiple section 924(c) sentences."
    Am. Pet. at 31.  For the reasons discussed herein, this claim has been forfeited because it was not
28  included in Petitioner's original motion, and was also not presented in his initial appeal to the Ninth
    Circuit.

1    Petitioner is currently serving his sentence.

2    For the reasons set forth the below, Petitioner's claims should be dismissed or denied without

3    any hearing.

4    **III.  DISCUSSION**

5    **A.    General Principles Governing Adjudication of a § 2255 Motion**

6    A motion under 28 U.S.C. § 2255 is a collateral attack on a criminal conviction that should only be

7    granted in exceptional cases.  "Habeas review is an extraordinary remedy and will not be allowed to do

8    service for an appeal."  <u>Bousley v. United States</u>, 523 U.S. 614, 621 (1998).  Thus, a petitioner cannot

9    succeed in a § 2255 motion merely by arguing that the trial court committed error.  Rather, relief

10   pursuant to § 2255 is limited to claims of constitutional or jurisdictional error, allegations that a

11   petitioner's sentence is illegal, or other limited collateral attacks on a sentence.  <u>See</u> 28 U.S.C.

12   § 2255(a); <u>see also</u> <u>United States v. Wilcox</u>, 640 F.2d 970, 972 (9th Cir. 1981) ("The statute enumerates

13   a *limited* number of claims which are cognizable . . . .") (emphasis added).  Therefore, § 2255 does not

14   allow a petitioner to challenge every alleged error made during his trial or sentencing.  <u>See</u> <u>United States</u>

15   <u>v. Berry</u>, 624 F.3d 1031, 1038 (9th Cir. 2010) (nothing the Supreme Court has "cautioned that § 2255

16   may not be used as a chance at a second appeal"); <u>see also</u> <u>Wilcox</u>, 640 F.2d at 973.

17   **B.    Applicable Law Regarding Ineffective Assistance of Counsel**

18   In order to sustain a claim of ineffective assistance of counsel, Petitioner must show that his

19   defense counsel's performance was "objectively unreasonable."  <u>See</u> <u>Strickland v. Washington</u>, 466 U.S.

20   668, 688 (1984).  More specifically, Petitioner has the burden of showing that: (1) his defense counsel's

21   performance was deficient; and that (2) this deficient performance prejudiced his defense and deprived

22   him of a fair trial.  <u>Id.</u> at 687; <u>United States v. Fry</u>, 322 F.3d 1198, 1200 (9th Cir. 2003).  The court does

23   not need to "address both components of the inquiry if the Petitioner makes an insufficient showing on

24   one."  <u>Strickland</u>, 466 U.S. at 697 (recognizing that it will "often" be "easier to dispose of an

25   ineffectiveness claim on the ground of lack of sufficient prejudice").

26   To satisfy <u>Strickland</u>'s first prong, Petitioner must show that his "counsel's representation fell

27   below an objective standard of reasonableness."  <u>Id.</u> at 688.  "The proper measure of attorney

28   performance [is] simply reasonableness under prevailing professional norms."  <u>Id.</u>  Thus, Petitioner must

show that his counsel's acts or omissions were not "within the range of [conduct] demanded of attorneys in criminal cases." <u>Hill v. Lockhart</u>, 474 U.S. 52, 56 (1985).  In considering this issue, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." <u>Strickland</u>, 466 U.S. at 689.  Moreover, *post-hoc* complaints about the strategy or tactics employed by defense counsel, or complaints that defense counsel did not conduct a sufficiently vigorous pretrial investigation, are typically held insufficient to satisfy <u>Strickland</u>'s first prong.  <u>See</u>, <u>e.g.</u>, <u>United States v. Simmons</u>, 923 F.2d 934, 956 (2d Cir. 1991) (appellant's displeasure with strategy employed by trial counsel was insufficient to establish ineffectiveness). Hence, Petitioner bears the burden of overcoming the heavy presumption that counsel's actions were sound.  <u>See Strickland</u>, 466 U.S. at 689.

To satisfy the second prong, Petitioner must show that he was actually prejudiced by the deficient representation he received.  <u>Id.</u> at 691-92.  Thus, an error by counsel alone, even if professionally unreasonable, does not warrant setting aside a judgment in a criminal trial if the error had no effect on Petitioner's case.  <u>Id.</u> at 691.  Rather, in order to constitute ineffective assistance of counsel, deficiencies in counsel's performance must have been prejudicial to Petitioner's defense.  <u>Id.</u> at 692.  The focus of this analysis is whether the result of the proceeding was fundamentally unfair or unreliable because of counsel's ineffectiveness.  <u>See Lockhart v. Fretwell</u>, 506 U.S. 364, 369 (1993).  It is not enough, however, for Petitioner to show that counsel's errors had some conceivable effect on the outcome of trial because "virtually every act or omission of counsel would meet that test."  <u>Id.</u> at 693.  Instead, the prejudice analysis requires Petitioner to "show that there is a 'reasonable probability' that, but for counsel's unprofessional errors, . . . the fact finder would have had a reasonable doubt respecting guilt."  <u>Id.</u> at 694-95.  Courts must consider the totality of the evidence presented at trial and presume that the fact finder acted in accordance with the law.  <u>Id.</u> at 695.

### C.   Petitioner's Motion Under § 2255 Should Be Denied

Each of Petitioner's claims will be addressed *seriatim*:

### 1.   Trial counsel was not ineffective for failing to challenge the grand and petit jury selection procedure (Claims I & III)

Petitioner claims that trial counsel was ineffective for "failing to challenge the Northern District of California's grand and petit jury selection procedures" for his 1998 grand jury and 2000 trial jury

1   selections.  Am. Pet. at 2, 3.  Petitioner contends that had trial counsel obtained and reviewed jury

2   selection evidence, then trial counsel "*could have* substantiated these claims," which may have

3   "uncovered information sufficient to sustain his Sixth Amendment challenge."  Id. at 3, 4 (emphasis

4   added).  The only evidence that Petitioner provides is that the Bay Area's racial demographics were

5   evolving in the late 1990s, with the Bay Area "White" population decreasing roughly ten percent

6   between the 1990 census and the 2000 census and the region's Asian population increasing roughly four

7   percent during the same period.  Id. at 4.  Because Petitioner fails to meet his burden of showing both

8   that his trial counsel rendered deficient performance by not obtaining jury selection information and that

9   such a deficiency resulted in actual prejudice, this claim fails.

10          First, Petitioner fails the second prong of Strickland, which requires a demonstration of

11  prejudice.  See 466 U.S. at 697 (noting that courts may consider either prong of the Strickland test first,

12  and need not address both if petitioner fails one).  Petitioner makes no argument and fails to put forth

13  any evidence as to how he was actually prejudiced by the grand or petit jury selections.  See Strickland,

14  466 U.S. at 687.  Instead, Petitioner merely concludes that had his trial counsel challenged the jury

15  selection, and had the jury selection evidence shown impropriety in the jury selection process, then

16  Petitioner may have a Sixth Amendment challenge.  Such an attenuated, conclusory claim based on bare

17  allegations cannot stand.  See Brown v. Carey, 2011 WL 5444251, at *10 (N.D. Cal. Nov. 9, 2011)

18  (finding that defendant failed to "explain how [challenging the grand jury selection] would have made a

19  difference in the outcome of his trial") (citing James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994)

20  ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas

21  relief.")); see also United States v. Lopez, 2014 WL 820209, at *6 (M.D. Pa. Mar. 3, 2014)

22  ("[Defendant] is not entitled to the requested [jury selection] documents, a demographic expert, or relief

23  in his favor because, regardless of the merits of the underlying fair cross section issue, he only makes

24  conclusory allegations concerning the Strickland factors.").

25          Second, even if Petitioner could show that the cross section of his grand or petit jury was not fair

26  because it did not proportionally reflect the 1990 or 2000 census demographic, "a defendant has no right

27  to a 'petit jury' composed in whole or in part of persons of his own race."  Batson v. Kentucky, 476 U.S.

28  79, 85 (1986) holding modified on other grounds by Powers v. Ohio, 499 U.S. 400 (1991) (citation

1   omitted).  The Supreme Court has "never held that the Sixth Amendment requires that petit juries

2   actually chosen must mirror the community and reflect the various distinctive groups in the population.

3   Indeed, it would be impossible to apply a concept of proportional representation to the petit jury in view

4   of the heterogeneous nature of our society."  Batson, 476 U.S. at 86 n.6 (internal citations and quotation

5   marks omitted).

6          Petitioner correctly notes that "petit juries must be drawn from a source fairly representative of

7   the community . . . ."  Am. Pet. at 2 (quoting Taylor v. Louisiana, 419 U.S. 522, 538 (1975)).

8   Petitioner's case, however, is not Taylor.  In Taylor, a male defendant challenged the constitutionality of

9   a Louisiana law that excluded women from jury service unless she filed a written declaration of her

10  desire to participate in jury service.  Id. at 523.  There, the Court held that women as a class could not be

11  systematically excluded, especially where such a law would impact 53% of the population.  Id. at 531.

12  The alleged discrimination in the present case is not remotely comparable to the systematic

13  discrimination in Taylor.  Indeed, Taylor is actually favorable to the Government because Taylor stated

14  — as Petitioner failed to note — "[i]t should also be emphasized that . . . we impose no requirement that

15  petit juries actually chosen must mirror the community and reflect the various distinctive groups in the

16  population."  419 U.S. at 538.

17         It appears that Petitioner is arguing that the alleged failure to account for the 10% decrease in the

18  white population and the 4% increase in the Asian population gives "rise to violation of the

19  constitutional and statutory rights identified."  Am. Pet. at 4.  However, Petitioner completely fails to

20  meet his burden to establish a *prima facie* violation of the fair cross-section requirement in Taylor,

21  pursuant to which Petitioner must show:

22         (1)     that the group alleged to be excluded is a 'distinctive' group in the community;

23         (2)     that the representation of this group in venires from which juries are selected is not fair

24  and reasonable in relation to the number of such persons in the community; and

25         (3)     that this underrepresentation is due to systematic exclusion of the group in the jury-

26                 selection process.

27  See Am. Pet. 2-3; see also Duren v. Missouri, 439 U.S. 357, 364 (1979).

28         First, Petitioner does not even identify what the excluded "distinctive" group is.  Second,

GOVERNMENT'S OPPOSITION
CR 96-00094 JSW                              8

1   Petitioner's argument — that the jury demographic may not have reflected the minimal 10% decrease in

2   the white population and 4% in the increase in the Asian population — does not necessarily mean that

3   such a representation was unfair and unreasonable.  And finally, Petitioner makes no mention of any

4   potential systematic exclusion of the group in the jury-selection process.[4]  Therefore, Petitioner's mere

5   assertion that the grand and petit juries may not have proportionally reflected the demographics shift

6   between the 1990 and 2000 census is insufficient to demonstrate that such a discrepancy had any effect

7   or prejudice on Petitioner.

8       Lastly, Petitioner also fails to establish the first <u>Strickland</u> prong for deficient performance

9   because defense counsel does not have a duty to challenge jury selection procedures, even when his

10   client requests it.  "Reasonable and effective assistance of counsel does not require an attorney to sift

11   through voluminous jury records every time his client requests that he challenge the array as

12   unconstitutionally drawn."  <u>Gustave v. United States</u>, 627 F.2d 901, 906 (9th Cir. 1980).  Petitioner

13   "must [show] some evidence of irregularity in jury selection practices before failure to object to the

14   panel rises to the level of ineffective assistance of counsel."  <u>See id.</u> (citation omitted).  Attorneys are

15   afforded discretion when it comes to jury selection, "involv[ing] the exercise of a judgment which

16   should be left to competent defense counsel."  <u>Id.</u> ("[T]he decision whether to request certain voir dire

17   questions was a strategic decision of the attorney and his failure to do so, even against his client's

18   wishes, is not ineffective representation.").

19       Following <u>Gustave</u>, other district courts have held that counsel was not ineffective where an

20   attorney does not raise jury selection issues.  <u>See</u>, <u>e.g.</u>, <u>Lopez</u>, 2014 WL 820209, at *6 ("[Defendant]

21   fails to make any argument concerning how the outcome of his trial would have been any different had

22   trial counsel made a fair cross section challenge.");  <u>United States v. Lindsey</u>, 505 F. Supp. 2d 838, 847

23

_____

24       [4] <u>But see</u> <u>Chin v. Runnels</u>, 343 F. Supp. 2d 891, 901 (N.D. Cal. 2004) <u>aff'd sub nom.</u> <u>Chin v.</u>

25   <u>Carey</u>, 160 F. App'x 633 (9th Cir. 2005) (finding that the petitioner established a *prima facie* case of
   discrimination because: (1) "Chinese-Americans are a legally recognized, distinct class"; (2) the

26   petitioner made an "undisputed statistical showing that no Chinese-Americans had served as grand jury
   foreperson over a 36-year period, even though they represented 13.4% of the pool of grand jurors from

27   which the foreperson was chosen"; and (3) "the selection process was susceptible to abuse given the
   judge selected the foreperson after personally observing each prospective juror").  However, the <u>Chin</u>

28   case is distinguishable from ours because Petitioner here fails to make any of the requisite showings that
   the petitioner in <u>Chin</u> made.

GOVERNMENT'S OPPOSITION
CR 96-00094 JSW                9

1  (D. Kan. 2007) (requiring a showing of some irregularity in the jury selection system used at the time of

2  trial, as well as "reasonable probability that the result of [the] case would have been different with a jury

3  composed of other citizens"); United States v. Powell, 2004 WL 1534176, at *7 (D. Kan. May 10, 2004)

4  (finding that the defendant failed to show "(1) that the representation of blacks on the juries was unfair

5  or unreasonable in relation to the number of blacks in the community or (2) that blacks were

6  systematically excluded from his venire").

7       Here, Petitioner does not cite to any cases where failure to challenge jury selection procedures

8  constitutes ineffective assistance of counsel.  Petitioner provides no argument or evidence as to "how the

9  outcome of his trial would have been any different had trial counsel made a fair cross section challenge,"

10  or that there was any real irregularity in the jury selection practices.  See Lopez, 2014 WL 820209, at

11  *6; see also Gustave, 627 F.2d at 906.  Instead, Petitioner only cites to a handful of Northern District

12  cases where trial counsel moved the court for jury selection evidence and the court granted such motions

13  in varying degrees.  See Am. Pet. at 3-4.  However, where attorneys have the discretion to exercise their

14  judgment, offering examples of when attorneys did request jury selection documentation does not, in

15  any way, demonstrate that attorneys who do not request the documentation are deficient.  Since

16  Petitioner failed to meet his burden of establishing both Strickland prongs, this claim of ineffective

17  assistance of trial counsel fails.

     **2.**    **Trial counsel was not ineffective for failing to object to the prosecutor's alleged misconduct. (Claim IX)**

20       Petitioner claims that his trial counsel was constitutionally ineffective for failing to object to the

21  prosecutor's alleged misconduct.  Interestingly, Petitioner's Amended Petition totally rewrites his

22  original claim.  As the Amended Petition concedes, Claim IX originally was that

23       trial counsel rendered constitutionally ineffective assistance by failing to object to Government misconduct; his supporting authorities focused on the Government's handling of cooperating co-defendant Chhayarith ("Charlie") Reth.  With the assistance of undersigned counsel, [Petitioner] now presents further argument regarding Reth in connection with *Claim XI*, *infra*, and supplements his Government misconduct claim on activity relating to suspected Government informant Tuan Thanh Nguyen a.k.a. "Ah Muoi."

27       Am. Pet. At 11 (emphasis added, footnote regarding use of the name "Ah Muoi" instead of

28  Nguyen omitted).

GOVERNMENT'S OPPOSITION
CR 96-00094 JSW                10

Thus, as an initial matter, Petitioner has engaged in a bit of bait-and-switch: after filing his original ineffective assistance claim based on trial counsel's alleged failure to object to the prosecution's alleged mishandling of cooperator Reth, Petitioner now contends that trial council was ineffective for not objecting to the Government's alleged failure to disclose that Tuan Thanh Nguyen was an informant, which, according to Petitioner, would have undermined necessity for the wiretap in this case. See Am. Pet. 11-19. Accordingly, the Court should reject Claim IX because Petitioner has failed to provide any argument in support of his original claim.

In any event, even if the Court were to consider Petitioner's new amended claim, the claim still fails. Petitioner's assertion that "Ah Muoi"/Nguyen was an informant is based, at best, on rank speculation. Petitioner asks the Court to embrace his unsupported claim that Nguyen somehow has been treated more leniently than Nguyen should have been, and, therefore, Nguyen *must have* been an informant. Petitioner's theory, however, is, at best, fanciful. Petitioner references various events purportedly demonstrating preferential treatment for Nguyen, but (even assuming the veracity of Petitioner's account) none of them actually establishes that Nguyen was an informant. See Am. Pet. at 16-17 (setting forth Nguyen's various prosecutions in the District of Massachusetts, the Central District of California, and the Northern District of California). Indeed, if anything, the events show that, rather than getting preferential treatment, Nguyen was prosecuted as a criminal defendant. Petitioner's assertion that Nguyen was treated leniently is nothing more than assumption and self-serving wishful thinking: Petitioner is not in a position to evaluate the prosecution's evidence, let alone the charging decisions of the Government. In addition, as Petitioner acknowledges, his claim is contrary to affirmative representations in the record that Nguyen was not an informant. See Am. Pet. at 15 (citing Government submissions contradicting claim that Nguyen was an informant and characterizing Nguyen as a fugitive).

Of course, Petitioner attempts to hide the hollowness of his assertions by alleging that the Government has been deceiving the Court. Petitioner's claim of Government deception, however, is utterly unsupported. Indeed, Petitioner's claim of Government deception would require the participation of Judge Illston as well as the Probation Department. As set forth in Petitioner's own brief, the Government sought a six month term of imprisonment for Nguyen for making false statements, but the

1   Probation Department recommended a sentence of probation, which Judge Illston ultimately imposed.

2   <u>See</u> Am. Pet. at 17.  Thus, if Nguyen was treated leniently, Petitioner's own submission demonstrates

3   that it was over the Government's objection.

4       Accordingly, because there is not even the barest of factual support for Petitioner's claim that the

5   Government engaged in any misconduct, Petitioner's claim fails.  Trial counsel cannot be called

6   ineffective for failing to object to prosecutorial misconduct that only existed in Petitioner's imagination.

7       **3.      Trial counsel was not ineffective for failing to interview and present witnesses in defendant's defense. (Claim XI)**

8

9       Petitioner original claimed as Claim XI that trial counsel was constitutionally ineffective by

10  failing to call Chhayarith "Charlie" Reth as a defense witness.  <u>See</u> Am. Pet. At 19.  In his Amended

11  Petition, Petitioner now also claims that Reth provides proof of Petitioner's actual innocence of his

12  involvement in the Aristocrat, Inc., robbery related crimes.  <u>See</u> id.  Neither claim has merit.

13              **(a)      Actual Innocence**

14      Petitioner claims that this Court should vacate his convictions as to Counts Thirteen through

15  Fifteen in his original conviction on the grounds that Reth — who he did not call at trial — has

16  exonerated Petitioner of culpability in the Aristocrat robbery.

17      In the Ninth Circuit, a habeas petitioner "asserting a freestanding innocence claim must go

18  beyond demonstrating doubt about his guilt, and must affirmatively prove that he is probably innocent."

19  <u>Carriger v. Stewart</u>, 132 F.3d 463, 476 (9th Cir. 1997) (en banc).  In formulating its standard, the Ninth

20  Circuit relied heavily on the opinions of several Justices in <u>Herrera v. Collins</u>, 506 U.S. 390 (1993), and

21  assumed that "the threshold showing for such an assumed right would necessarily be extraordinarily

22  high." <u>Id</u>. "If the federal courts are to entertain claims of actual innocence, their attention, efforts, and

23  energy must be reserved for the truly extraordinary case." Thus, a petitioner may not merely "cast a vast

24  shadow of doubt over the reliability of his conviction," and new evidence may not serve "only to

25  undercut the evidence presented at trial, not affirmatively to prove [petitioner's] innocence." <u>Id</u>. at 477.

26  The threshold for a claim of actual innocence is high, and the evidence that petitioner presents here does

27  not rise to the level contemplated in <u>Carriger</u> or <u>Herrera</u>.

28      In <u>Carriger</u>, the petitioner presented the confession, under oath, of another man who corroborated

1  many of the details at the scene of the crime that would have been available only to the perpetrator. Id. at

2  471-72.  Notably, despite the details of the confession, the Carriger Court found that "the confession by

3  itself falls short of affirmatively proving that [the petitioner] more likely than not is innocent." Id. at

4  477.  Similarly, in Jackson v. Calderon, 211 F.3d 1148 (9th Cir. 2000), the Court found that an expert

5  who swore that "to a 95% medical certainty, [petitioner] could not have premeditated or specifically

6  intended to kill" was not sufficient to overcome the "extraordinarily high" threshold for actual innocence

7  claims. Id. at 1165.

8          Here, Petitioner's "new evidence" of his "actual innocence" is a summary of an interview of

9  Reth prepared in April 2010 by a private investigator working for Petitioner in connection with

10  Petitioner's prosecution in the Eastern District of California.[5]  See Am. Pet. At 23; Am. Pet. Ex. F

11  (Docket 2126-8 (summary of Reth interview).  Even if the Court were to accept this summary of Reth's

12  interview at face value, however, the summary hardly suffices to establish Petitioner's actual innocence

13  for the Aristocrat robbery.

14          First, the summary itself is somewhat incomprehensible.  It is far from clear what Reth actually

15  said and what might merely have been the defense investigator's inferences.  See Am. Pet. Ex. F.

16          Second, and more significantly, Reth's putative assertion of Petitioner's innocence of the

17  Aristocrat robbery are conclusory and legally irrelevant.  Petitioner contends that Reth totally exonerates

18  him by (supposedly) stating: (1) coconspirator Mady Chan "call[ed] the shots" on the Aristocrat

19  robbery; (2) coconspirator John Chu and Chan determined the robbery site and Petitioner did not "know

20  anything about the [A]ristocrat robbery at all;" (3) Petitioner was not involved and did not know about

21  the Aristocrat robbery; (4) he could not recall implicating Petitioner in the Aristocrat robbery;

22  (5) Petitioner was not involved in "everything; and (6) Petitioner "was not and should not be indicted in

23  the Aristocrat robbery, because [it's] not his robbery site."  Am. Pet. at 23 (brackets in original, internal

24  quotation marks omitted].  Reth's subjective opinion about the sufficiency of the evidence against

25  Petitioner, however, fails to establish Petitioner's actual innocence.  In addition, Reth's lack of

26

27          [5] In addition to the charges in the Northern District of California, Petitioner was also prosecuted
      and convicted in the Eastern District of California for money laundering, robbery, and murder related

28  charges, and is currently serving a sentence of life imprisonment as a result.  See 99-CR-0350-WBS and
      99-CR-0433-WBS.

1  knowledge as to Petitioner's personal involvement in the Aristocrat robbery is also not sufficient to

2  establish Petitioner's actual innocence because, under the law, Petitioner need not have been personally

3  involved in the crimes in order to be guilty.  See, e.g., Luong, 627 F.3d at 1308 (explaining that, under

4  Pinkerton v. United States, 328 U.S. 640, 646-47 (1946), "a conspirator is criminally liable for the

5  substantive offenses committed by a co-conspirator when they are reasonably foreseeable and

6  committed in furtherance of the conspiracy") (internal quotation marks and additional citation omitted);

7  Excerpt of Appellate Record 1026-31, 1047-49 (district court instructing that guilt for robbery can be

8  established if defendant "caused employees . . . to part with computer chips and parts in their possession

9  by the wrongful use or threat of force or fear," mirroring 18 U.S.C. § 2(b)[6]).

10        Indeed, as the Ninth Circuit already found:

11        Sufficient evidence supported Luong's conviction of the Aristocrat counts even though there was
          no direct evidence that he specifically agreed to rob Aristocrat.  A rational jury could infer his
12        agreement from the evidence that he was supervising the crew chief [Reth] who executed the
          Aristocrat robbery, actively participated in the selection of the crew chief's next robbery target,
13        and directed the crew chief during the time period when Aristocrat was robbed.

14

15  2006 WL 3825384, at *2.  Nothing in the summary of Reth's supposed interview contradicts the Ninth

16  Circuit's finding, which affirmed Petitioner's guilt based on the fact that Petitioner supervised Reth,

17  actively participated in selecting the robbery crew's next target, and directed Reth during the time period

18  of the Aristocrat robbery.  Accordingly, Petitioner has not even come close to establishing his actual

19  innocence.

20                          **(b)      Ineffective Assistance**

21        In the alternative, Petitioner claims that this Court should find that Petitioner's trial counsel

22  rendered ineffective assistance by failing to call Reth as an exonerating witness.  As noted above,

23  however, "a court must indulge a strong presumption that counsel's conduct falls within the wide range

24  of reasonable professional assistance; that is, the defendant must overcome the presumption that, under

25  the circumstances, the challenged action might be considered sound trial strategy."  Strickland, 466 U.S.

26

27  ⎯⎯⎯⎯⎯⎯⎯⎯
          [6] Title 18, United States Code, Section 2(b) provides that a defendant who "willfully causes an
28  act to be done which if directly performed by him or another would be an offense against the United
     States, is punishable as a principal."

GOVERNMENT'S OPPOSITION
CR 96-00094 JSW                        14

at 689.  Where decisions are "strategic in nature," reviewing courts must "provide trial counsel with great deference."  Murray v. Schriro, __ F.3d __, 2014 WL 997716 (9th Cir. Mar. 17, 2014).  "Few decisions a lawyer makes draw so heavily on professional judgment as whether or not to proffer a witness at trial."  Lord v. Wood, 184 F.3d 1083, 1095 (9th Cir. 1999).

In the present case, two witnesses, Kevin Liu and John Chou, testified at trial and did not implicate Petitioner in the Aristocrat robbery crimes.  Petitioner additionally claims that their testimony exonerated him of those crimes.  Thus, calling Reth to testify would have been merely cumulative.  See Bobby v. Van Hook, 558 U.S. 4, 11 (2009) (at a certain point "the search for [cumulative evidence can be] distractive from more important duties").  It is clear from the verdict that the jury did not give great weight to the testimony of the two witnesses, and it seems unlikely that they would have given more weight to a third witness testifying to the same acts.

In addition, in August and October of 1999, Petitioner's counsel sought to interview Reth, but Reth, through his attorney, declined to be interviewed.  See Am. Pet. Ex. G (Docket #2126-9).  Thus, trial counsel can hardly be faulted for not calling a prosecution witness whose testimony was unknown.  See Sullivan v. DeLoach, 459 F.3d 1097, 1111 (11th Cir. 2006) (finding no ineffective assistance for failure to call a witness where trial counsel could only speculate about the content of witness' testimony).  Because he was unable to interview Reth, counsel's decision not to put him on the stand should be considered sound trial strategy. In fact, putting Reth on the stand without having interviewed him beforehand may have been a disaster for Petitioner.  Finally, given the fact that the jury clearly did not credit Liu's and Chou's testimony, it seems unlikely that counsel's failure to call Reth prejudiced the defense and thus Petitioner's claim should fail the second part of the ineffective assistance test as well.  See Strickland, 466 U.S. at 687.

### 4.    Trial counsel was not ineffective for failing to object to the jury charge. (Claim XII)

Petitioner claims that trial counsel was ineffective for failing to object to a jury instruction for 18 U.S.C. § 1951 stating that the first element of the crime of armed robbery was that petitioner "caused" employees to part with computer chips.  Petitioner claims that the correct instruction would have used the word "induced" rather than "caused."  To support this proposition, petitioner points to a 2000

1  amendment to the Ninth Circuit model jury instructions in which the word "caused" was replaced with

2  "induced."

3       As a threshold matter, petitioner makes no showing of when in 2000 the new model jury

4  instructions were promulgated. Petitioner's conviction was handed down in June of that year, and Judge

5  Patel cannot have been expected to predict the existence of a model jury instruction that had not yet been

6  published. However, even if the model jury instructions in effect at the time of trial included the

7  "induced" language, counsel's conduct was not deficient and the result did not prejudice the jury. The

8  Ninth Circuit "examine[s] the reasonableness of counsel's conduct 'as of the time of counsel's

9  conduct.'" United States v. Chambers, 918 F.2d 1455, 1461 (9th Cir. 1990) (quoting Strickland, 466

10  U.S. at 695). There can be no deficiency for failing to object to an instruction that was standard at the

11  time of the trial. United States v. Chambers, 918 F.2d 1455, 1461 (9th Cir. 1990), see also Pelmer v.

12  White, 877 F.2d 1518, 1522 (11th Cir. 1989) (holding no ineffective assistance for failure to object to

13  instructions approved by the state appellate court). In any event, the difference between "caused" and

14  "induced" is hardly material.

15      Moreover, when courts in the Ninth Circuit determine "whether the failure to object caused

16  prejudice, we 'consider the totality of the evidence before the . . . jury.'" Chambers, 918 F.2d at 1461

17  (9th Cir. 1990) (quoting Strickland, 466 U.S. at 695). The Chambers Court found "no reasonable

18  probability that a more precise possession instruction would have affected the outcome of the case"

19  where the Government had introduced "strong evidence" in support of that defendant's possession of

20  cocaine. Id. Here, Petitioner has produced no evidence that the jury instruction, if amended in the way

21  he now suggests, would have resulted in a different outcome. The burden is on Petitioner to show actual

22  prejudice, and he simply has not met that burden. See Strickland, 466 U.S. at 693 ("actual

23  ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement

24  that the defendant affirmatively prove prejudice").

25          **5.      Appellate counsel was not ineffective for failing to identify and raise issues on
                       appeal. (Claim XIII)**

26

27      Petitioner's Claim XIII originally alleged that appellate counsel was ineffective for failing to

28  identify and present various issues on appeal. In his Amended Petition, however, Petitioner now

1  contends as Claim XIII that not only was appellate counsel ineffective, but trial counsel was ineffective

2  as well for failing to argue that he should have been sentenced under 18 U.S.C. § 924(o) rather under 18

3  U.S.C. § 924(c) and for not objecting to the failing to identify which § 924(c) count was the "second or

4  subsequent" count.  Petitioner also presents an entirely new claim, i.e., that Judge Patel erred by

5  imposing multiple sentences under 18 U.S.C. § 924(c).  These claims are frivolous and will be addressed

6  *seriatim*, beginning with the allegation that Judge Patel erred.

7           **(a)       Petitioner's § 924(c) sentences were properly imposed**

8          Petitioner contends that Judge Patel erred by sentencing him for two counts of violating 18

9  U.S.C. § 924(c), which resulted in a sentence of 25 years' imprisonment consecutive to any other term

10  of imprisonment, 5 years for the first violation and 20 years for the second.  Petitioner claims that the

11  jury found a single overarching Hobbs Act robbery conspiracy and, as a result, multiple § 924(c)

12  violations could not have been charged based on the same underlying crime of violence.  See Am. Pet. at

13  42-43.

14          As an initial matter, Petitioner failed to present this claim in his first appeal and has presented no

15  facts to establish "cause" and "prejudice" to excuse this failure.  This claim is therefore procedurally

16  barred from § 2255 review.  See, e.g., United States v. Benboe, 157 F.3d 1181, 1184 (9th Cir. 1998).

17          This claim is also utterly devoid of any basis in fact.  The § 924(c) charges against Petitioner

18  were charged in Count Twelve and Thirteen.  Count Twelve alleged the use of a firearm during or in

19  relation to the Hobbs Act robbery of Hokkins Systemation charged in Count Eleven, while Count

20  Fifteen charged the use of a firearm during or in relation to the Hobbs Act robbery of Aristocrat charged

21  in Count Fourteen.  Contrary to Petitioner's assertion, therefore, the § 924(c) offenses for which he was

22  convicted were not predicated at all on any Hobbs Act robbery *conspiracy*, but were each explicitly

23  predicated on a separate and actual Hobbs Act *robbery*.[7]  Judge Patel, thus, committed no error.  See

24  United States v. Fontanilla, 849 F.2d 1257, 1259 (9th Cir. 1988) (holding that a defendant may be

25

26    [7] Petitioner's assertion that the jury found a single overarching Hobbs Act robbery conspiracy is also
     baseless.  The indictment did not charge a single overarching Hobbs Act robbery conspiracy.  Rather,

27  the indictment charged, against Petitioner, two separate Hobbs Act robbery conspiracies, Counts Ten
and Thirteen, and the Court of Appeals held on Petitioner's first appeal that these conspiracies were

28  properly charged because "each involved a distinct agreement to violate the statute."  Luong, 2006 WL
3825384, at *2.

1   convicted of multiple § 924(c) violations so long as the predicate crimes "were properly charged as

2   separate crimes"); see also United States v. Smith, 924 F.2d 889, 894 (9th Cir. 1991) (holding that

3   separate § 924(c) counts must "be based on separate predicate offenses").

4                      **(b)      Neither trial counsel nor appellate counsel were ineffective**

5           Petitioner claims that trial and appellate counsel were both ineffective for failing to raise

6   objections to his sentences for his § 924(c) convictions. Specifically, Petitioner contends that counsel

7   erred by failing to argue: (1) that he should have been sentenced under § 924(o) instead of § 924(c); and

8   (2) that the indictment was defective because it failed specifically to allege which § 924(c) was the

9   "second or subsequent" § 924(c) charge. Both of these legal claims are frivolous and, as such, counsel

10  could not have fallen below an objective level of competence for not raising them.

11  Petitioner's § 924(o)/§ 924(c) claim fails as a matter of law. First, violating § 924(o) is a separate and

12  distinct crime from § 924(c): the latter criminalizes the use or possession of a firearm in relation to or in

13  furtherance of a crime of violence, while the former punishes *conspiring* to violate § 924(c). The

14  elements are different and the punishments are different. Here, Petitioner was never charged with a

15  violation of § 924(o), so there is no basis for sentencing him under § 924(o). Second, Petitioner's

16  insistence that he was convicted of the § 924(c) violations based on a Pinkerton theory actually

17  undermines his claim: by its own terms, Pinkerton allows a conspirator to be convicted of the

18  *substantive crimes* committed by a co-conspirator that were reasonably foreseeable and within the scope

19  of the conspiracy: "Under Pinkerton v. United States, 328 U.S. 640, 647-48 (1946), a conspirator is

20  criminally liable for the *substantive offenses* committed by a co-conspirator when they are reasonably

21  foreseeable and committed in furtherance of the conspiracy." United States v. Luong, 627 F.3d 1306,

22  1308 (9th Cir. 2010) (internal citation, quotation marks, and alterations omitted) (emphasis added).

23  Pinkerton cannot, by definition, be invoked to convict a conspirator of another conspiracy crime, such as

24  a violation of § 924(o). Third, as set forth above, the § 924(c) counts in the indictment were all properly

25  charged because each one was predicated on a separate and distinct Hobbs Act robberies.

26          Moreover, Petitioner's policy arguments are unpersuasive. Section 924(o) merely criminalizes

27  conspiracies to violate § 924(c). Thus, a violation of § 924(o) need not require an actual violation of §

28  924(c); the agreement to violate § 924(c) is sufficient, and no actual gun need be used or possessed. See

1  United States v. Jimenez Recio, 537 U.S. 270, 274 (2003) ("The Court has repeatedly said that the

2  essence of a conspiracy is an agreement to commit an unlawful act.  That agreement is a distinct evil,

3  which may exist and be punished whether or not the substantive crime ensues." (internal citations and

4  quotation marks omitted)); Salinas v. United States, 522 U.S. 52, 65 (1997) ("It is elementary that a

5  conspiracy may exist and be punished whether or not the substantive crime ensues, for the conspiracy is

6  a distinct evil, dangerous to the public, and so punishable in itself.").  Indeed, in addition to Judge Patel,

7  another judge in the Eastern District of California already rejected Petitioner's claim.  See United States

8  v. Luong, 2009 WL 1393406, at *17 (E.D. Cal. May 15, 2009) (rejecting Petitioner's argument made in

9  the Eastern District of California and holding that "[s]ection 924(o) punishes persons who conspire to

10  violate 924(c), which is distinct from imposing Pinkerton liability on a person who conspires to violate

11  18 U.S.C. [§ 1951(a)], but whose coconspirators violate 924(c)").

12      Finally, Petitioner's claim that his § 924(c) convictions are unfair because he never personally

13  used a gun is not well taken. Petitioner is not less culpable than the robbers he controlled, supervised,

14  and profited from.  Indeed, Petitioner did not even challenge on appeal the district court's determination

15  that he was a leader, under U.S.S.G. 3B1.1(a), of The Company.  If anything, as one of the leaders of a

16  ruthless and violent criminal enterprise, Petitioner is one of the more culpable defendants and directly

17  responsible for the mayhem he caused as a boss of his criminal enterprise.  Thus, Petitioner's claim that

18  he should have been sentenced under § 924(o) is frivolous on every level.

19      In addition, Petitioner's "second and subsequent" § 924(c) claim is also legally untenable.  "As

20  the Supreme Court made clear fifteen years ago in Deal v. United States, 508 U.S. 129 (1993), when the

21  government charges more than one § 924(c) offense in a single indictment, each additional count is to be

22  treated as a 'second or subsequent' conviction for purposes of 18 U.S.C. § 924(c)(1)(C)(i) and therefore

23  carries a mandatory minimum sentence of twenty-five years."[8]  United States v. Beltran-Moreno, 556

24  F.3d 913, 915 (9th Cir. 2009).  Thus, the law does not require that an indictment containing more than

25  one § 924(c) count to specify which of the counts are "second or subsequent."

26

27      [8] By the time Beltran-Moreno was decided, Congress had increased the mandatory minimum
    consecutive sentence for a second or subsequent § 924(c) violation to 25 years, versus the 20 year

28  mandatory consecutive minimum faced by Petitioner.  However, this increase does not affect the holding
    of Deal, which was decided in 1993.

GOVERNMENT'S OPPOSITION
CR 96-00094 JSW                              19

1       Thus, because the legal claims that trial and appellate counsel allegedly failed to raise were

2   utterly frivolous, their failure to pursue them cannot be construed as falling below any objective

3   reasonable level of competence.  Petitioner's ineffective assistance claim fails.

4

5                            **IV.  CONCLUSION**

6       For all of the forgoing reasons, all of Petitioner's claims in support of his § 2255 motion should

7   be dismissed or rejected, and the Court should deny Petitioner's motion without discovery or an

8   evidentiary hearing.

9

10   DATED: April 28, 2014                     Respectfully submitted,

11                                     MELINDA HAAG
                                       United States Attorney

12

13

14                       By:        /s/
                               W.S. Wilson Leung
                               Assistant United States Attorney

15

16

17

18

19

20

21

22

23

24

25

26

27

28