**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 96-00094-1 JSW |
| Plaintiff, | **ORDER DENYING MOTION TO VACATE SENTENCE AND DENYING MOTION FOR DISCOVERY AND DENYING CERTIFICATE OF APPEALABILITY** |
| v. | |
| JOHN THAT LUONG, | |
| Defendant. | **(Docket Nos. 2058, 2124, 2125 )** |

Now before the Court is the motion for an order under 28 U.S.C. Section 2255 ("Section 2255") to vacate, set aside, or correct sentence filed by Defendant John That Luong ("Luong"). Also before the Court is Luong's motion for discovery. Having reviewed and considered the parties' papers, relevant legal authorities, and the record in this case, the Court HEREBY DENIES the motion to vacate, DENIES the motion for discovery, and DENIES a certificate of appealability.

**BACKGROUND**

On March 24, 1998, the Government charged Luong, and others, in a 21 count Superseding Indictment with racketeering, in violation of the Racketeer Influenced and Corrupt Organization Act ("RICO") (the "substantive RICO charge" or "Count One")), RICO conspiracy (the "RICO conspiracy" or "Count Two"), two counts of conspiracy to commit robbery affecting interstate commerce, in violation of the Hobbs Act (the "Hobbs Act conspiracies" or "Count 10" and Count 13"), two counts of robbery in violation of the Hobbs

Act (the "Hobbs Act robberies" or "Count 11" and "Count 14"), two counts of use of a firearm during in and relation to a crime of violence ("Count 12" and "Count 15"), conspiracy to distribute heroin ("Count 16"), two counts of distribution of heroin ("Count 17" and "Count 18"), and unlawful use of a telecommunications facility ("Count 19"). (Docket No. 471, Superseding Indictment.)

On June 22, 2000, the jury found Luong guilty on all but one of the charges. The jury acquitted Luong of Count 18 and the racketeering act associated with that Count. Judge Patel, who was assigned to the case at that time, sentenced Luong to a term of imprisonment of 1,058 months. On direct appeal, the United States Court of Appeals for the Ninth Circuit affirmed Luong's convictions, but it remanded for re-sentencing, because Luong had been sentenced under a mandatory guidelines scheme. *See United States v. Luong*, 215 Fed. Appx. 639, 646-47 (9th Cir. 2006) ("*Luong I*"). On remand, Judge Patel re-sentenced Mr. Luong to a total term of 65 years imprisonment, and, on December 29, 2010, the Ninth Circuit affirmed his sentence. *United States v. Luong*, 627 F.3d 1306 (9th Cir. 2010) ("*Luong II*").

On September 27, 2012, Mr. Luong, acting *pro se*, filed a motion to vacate, set aside, or correct sentence, which he amended, through counsel, on November 27, 2013. Luong originally asserted thirteen claims for relief. When he amended his petition, he withdrew seven of those claims, and in his reply brief, he withdrew claims I and III. Accordingly, Luong is proceeding on the following claims:

Claim IX: Trial counsel was ineffective, because he failed to object to Government misconduct.

Claim XI: Trial counsel was ineffective, because he failed to present a defense witness who would have exonerated Luong of the Aristocrat robbery. Luong also asserts he actually is innocent of that charge

Claim XII: Trial counsel was ineffective, because he failed to object to the jury instructions on the Hobbs Act robbery counts.

Claim XIII: Trial and appellate counsel were ineffective, because they failed to argue that the penalties set forth in Section 924(o) should apply to Counts 12

2

and 15, rather than the penalties set forth in Section 924(c). Luong also contends that trial and appellate counsel were ineffective, because they failed to argue that the trial court could not "stack" sentences under Section 924(c), where the Government did not charge a "second or subsequent" offense in the Superseding Indictment. Luong also argues that the trial court erred when it imposed multiple 924(c) sentences.

The Court shall address specific additional facts as necessary in its analysis of Luong's claims.

## ANALYSIS

**A.     Standard of Review.**

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

Section 2255 expressly provides, in pertinent part, that a district court shall grant an evidentiary hearing "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *Id.* § 2255(b). An evidentiary hearing usually is required "if the motion states a claim based on matters outside the record or events outside the courtroom." *United States v. Burrows*, 872 F.2d 915, 917 (9th Cir. 1989). However, denial without a hearing is appropriate whenever the record affirmatively manifests the factual or legal invalidity of the petitioner's claims. *Baumann v. United States*, 692 F.2d 565, 571 (9th Cir. 1982).

To justify an evidentiary hearing, the petitioner may not rely on "[m]ere conclusory statements." *Baumann*, 692 F.2d at 571 (citing *Wagner v. United States*, 418 F.2d 618, 621 (9th Cir. 1969)). However, "the petitioner need not detail his evidence, but must only make specific factual allegations which, if true, would entitle him to relief." *Id.* Thus, a court may deny a Section 2255 motion without a hearing if "viewing the petition against the record, its allegations

3

do not state a claim for relief or are so palpably incredible or so patently frivolous as to warrant summary dismissal." *Id.*

**B.   The Court Denies the Motion for Discovery.**

Luong filed a motion for discovery on Claims I, III, and IX, pursuant to Rule 6 of the Rules Governing Section 2255 Proceedings. That rule provides, in part, that "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law." Rule 6(a). However, a habeas petitioner is not entitled to discovery as a matter of course. *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). Rather, "'discovery is available only in the discretion of the court and for good cause shown.'" *Sivak v. Henderson*, 658 F.3d 898, 927 (9th Cir. 2011) (quoting *Rich v. Calderon*, 187 F.3d 1064, 1068 (9th Cir. 1999). Good cause exists "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is ... entitled to relief[.]" *Bracy,* 520 U.S. at 908-09; *Sivak*, 658 F.3d at 927.

As noted, Luong has withdrawn Claims I and III. Accordingly, the Court DENIES, AS MOOT, the motion for discovery on those claims. Luong also moves for discovery regarding the Government's relationship with Tuan Thang Nguyen (hereinafter "Ah Muoi"), who Luong asserts may have been an undisclosed confidential informant. For the reasons set forth in Section D, below, the Court finds that Luong has failed to meet his burden to show he would be entitled to relief on Claim IX. Accordingly, the Court DENIES the motion for discovery on that claim as well.

**C.   Legal Standards Applicable to Claims of Ineffective Assistance of Counsel.**

Most of Luong's claims are based on allegations of ineffective assistance of his trial and appellate counsel. The Sixth Amendment right to counsel guarantees not only assistance, but effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). In order to prevail on a Sixth Amendment ineffective assistance of counsel claim, Luong must establish two things. First, Luong must establish that counsel's performance fell below an "objective standard of reasonableness," under prevailing professional norms. *Id*. at 687-88. To meet his

4

burden on the first prong, Luong must show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. The relevant inquiry is not what defense counsel could have done, but rather whether the choices made by defense counsel were reasonable. *See Babbit v. Calderon*, 151 F.3d 1170, 1173 (9th Cir. 1998).

To meet his burden on the second prong, Luong must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceedings. *Id*. "The ultimate question to be answered is whether counsel's errors 'so upset the adversarial balance between the defense and prosecution that the trial was rendered unfair and the verdict rendered suspect.'" *Jones v. Wood*, 114 F.3d 1002 (9th Cir. 1997) (*citing Nix v. Whiteside*, 475 U.S. 157, 175 (1986)). The Court, however, need not consider one component, either the incompetence or prejudice prong, if there is an insufficient showing of the other. *Strickland,* 466 U.S. at 697.

Judicial scrutiny of counsel's performance must be highly deferential, and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*. at 689. In general, an attorney's tactics at trial are entitled to deference, and the fact that a criminal defendant and his or her trial attorney may have differences of opinion with regards to trial tactics does not by itself constitute ineffective assistance. *See United States v. Mayo*, 646 F.2d 369, 375 (9th Cir. 1981). Tactical decisions deserve deference when (1) counsel bases his or her trial conduct on strategic considerations, (2) counsel makes an informed decision based upon investigation, and (3) the decision appears reasonable under the circumstances. *Sanders v. Ratelle*, 21 F.3d 1446, 1456 (9th Cir. 1994).

**D.     Claim IX: Alleged Government Misconduct.**

In Claim IX, Luong argues that newly discovered evidence demonstrates that the Government engaged in misconduct. Specifically, he argues that Ah Muoi was an undisclosed Government confidential informant. As factual support for his claim, Luong contends that despite being identified in a wiretap as a target of the investigation, Ah Muoi received lenient treatment from the Government and escaped prosecution on these and similar charges. From

these facts, and based on the argument that the Government has neither confirmed nor denied that Ah Muoi was, in fact, an informant, Luong asks the Court to infer that he was.

The legal basis of Luong's claim is not readily apparent. Although originally couched as a claim for ineffective assistance, based on an alleged failure to object to prosecutorial misconduct, Luong now appears to argue that the failure to disclose Ah Muoi's status as an alleged informant amounts to a violation of *Brady v. Maryland*, 373 U.S. 83 (1963). Whether Luong's claim is based on alleged ineffective assistance, or whether it is based on an alleged violation of *Brady*, Luong must show that he suffered prejudice.[1] *Banks v. Dretke*, 540 U.S. 668, 691 (2004); *Strickland*, 466 U.S. at 694; *cf. Towery v. Schriro*, 641 F.3d 300, 309-10 (9th Cir. 2010) (no habeas relief on *Brady* claim under section 2254 where state court reasonably determined "beyond a reasonable doubt that the prosecutor's misconduct did not affect the verdict"). Luong offers no argument on the issue of prejudice, except to suggest that it may have affected the Government's necessity showing on the wiretap application. However, Luong does not expand on how a different ruling on that motion would have impacted the prosecution in this case. In short, Luong has not met his burden to show that he suffered prejudice.

Accordingly, the Court DENIES relief on Claim IX.

**E.    Claim XI: Actual Innocence and Ineffective Assistance Based on Failure to Present Exonerating Witness.**

In Claim XI, Luong asserts that newly discovered evidence shows that he is actually innocent of the Counts 13 through 15, which relate to the Aristocrat robbery (collectively the "Aristocrat robbery charges"). Luong alleges, in the alternative, that trial counsel was ineffective, because he failed to present Chhayarith "Charlie" Reth ("Reth") as a witness. According to Luong, Reth would have provided testimony that, if believed, would have exonerated him of these charges.

//

//

---

[1] The Government argues that Luong amended this claim, and that the Court should consider the claim as set forth in his original, *pro se*, motion. In the interests of justice, the Court has considered the claim as presented in the amended motion.

6

### 1. Actual Innocence.

Luong argues that he is actually innocent of the Aristocrat robbery charges. In order to prevail on a claim for actual innocence, a petitioner must "must go beyond demonstrating doubt about his guilt, and must affirmatively prove that he is probably innocent." *Carriger v. Stewart*, 132 F.3d 463, 476 (9th Cir. 1997) (citing *Herrerra v. Collins*, 506 U.S. 390, 442-44 (1993) (Blackmun, J., dissenting)); *see also id.* ("[T]he threshold for a freestanding claim of innocence" is "'extraordinarily high,' [and] contemplates a stronger showing than insufficiency of the evidence to convict.") (citing *Herrera*, 506 U.S. at 417, 426 (O'Conner, J., concurring).

To support this claim, Luong proffers a sworn statement from Reth. (Docket No. 2126, Declaration of Ethan A. Balogh filed November 27, 2013 ("11/27/2013 Balogh Decl."), Ex. F.) In *Carriger*, the defendant argued he was actually innocent of the crime and relied on the fact that another person confessed to the crime, although that person later recanted the confession. 132 F.3d at 471-73. The court concluded that, "[a]though the postconviction evidence he presents casts a vast shadow of doubt over the reliability of his conviction, nearly all of it serves only to undercut the evidence presented at trial, not affirmatively to prove Carriger's innocence." *Id.* at 477. The court also concluded that. because there were problems with the witness' credibility, the confession alone was not sufficient to prove the defendant "more likely than not" was innocent of the charge. *Id.*

The Court concludes the same is true in this case. Reth's statement corroborates the Ninth Circuit's conclusion that there was no evidence that Luong "specifically agreed to rob Aristocrat." *Luong I*, 215 Fed. Appx. at 644. Reth asserts that Aristocrat was not Luong's "robbery site," and that Luong was "not involved in Aristocrat." (*See* Balogh Decl., Ex. F at 12-13.) However, in his statement, Reth *is* equivocal about whether Luong knew about the Aristocrat robbery. (*Compare* 11/21/13 Balogh Decl., Ex. F at 8 ("John don't even know about that.") *with id.* at 2 and 8 (stating he "*does not think*" Luong knew about Aristocrat).) The Ninth Circuit also concluded that a "rational jury could infer [Luong's] agreement," because Luong supervised Reth, participated in the selection of Reth's next target, and directed Reth during the time period when Aristocrat was robbed. *Id.*; *see also id.* at 645 (rejecting argument

7

that prosecutor's closing argument did not constructively amend indictment, based in part on "substantial control Luong exerted over the Aristocrat crew chief at the time of the robbery"). In addition to the fact that Reth's most recent statement is equivocal about Luong's knowledge of the Aristocrat robbery, it also confirms that Luong supervised Reth and was supposed to "keep an eye" on him. (*Id.* at 4.)

Based on the record and the high standards required to prove a claim of actual innocence, the Court concludes that Reth's statement is insufficient to prove that it is "more likely than not" that Luong was innocent of the Aristocrat robbery charges.

### 2. Ineffective Assistance.

Luong also asserts that trial counsel was ineffective, because he should have presented Reth as a defense witness. With respect to *Strickland*'s first prong, whether or not to present a witness at trial is one of the "[f]ew decisions" that a lawyer makes that draws "heavily on professional judgment." *Lord v. Wood,* 184 F.3d 1083, 1095 (9th Cir. 1999). However, "counsel is deficient if he or she possesses exculpatory information but has no strategic reason for withholding it." *Vega v. Ryan*, 757 F.3d 960, 967 (9th Cir. 2014); *cf. Fernandez v. Valenzuela*, 2014 WL 293485, at *12 (C.D. Cal. Jan. 24, 2014) ("Failure to present probative, noncumulative evidence in support of a chosen defense strategy is deficient performance absent a reasonable tactical justification.") (citing *Alcala v. Woodford*, 334 F.3d 862, 890 (9th Cir. 2003)). In general, the Court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. A court may afford less deference to counsel's decision not to call a witness that he has not personally interviewed. *Lord*, 184 F.3d at 1095 n.8. However, a court also may afford less deference to the decision "to call a witness whom [counsel] has not interviewed or otherwise prepared." *Alcala*, 334 F.3d at 890.

With regard to *Strickland's* second prong, a defendant must show that the witness was likely to have been available to testify, that the witness would have testified in the manner proffered by the defendant, and that the proffered testimony created a reasonable probability that the jury would have reached a verdict more favorable to the petitioner. *Id.* at 872-73.

8

Luong does not challenge trial counsel's decision to defend against the Aristocrat charges on the basis that Luong was not involved in the Aristrocrat robbery and did not direct Reth. The record shows that counsel was able to elicit favorable testimony on those points from Kevin Liu and John Chu, who testified that Luong was not involved with the Aristocrat robbery. (*See, e.g.,* Trial Transcript at 5066, 5055-56, 5174, 5306, 5578-81, 6007, 6011.) Relying heavily on *Alcala* and *Vega*, Luong argues, however, that Reth was the person most qualified to testify who gave him direction and, thus, that he would have provided non-cumulative and more persuasive testimony on that issue.

In *Vega*, the defendant was accused of sexually abusing his step-daughter. He argued that his trial counsel failed to review prior counsel's files, which contained information about a witness who could have testified that the victim had recanted her testimony and, as a result, failed to call that witness at trial. The court concluded that there was no strategic reason not to call the witness, and the court based its reasoning, in part, on the fact that the witness was available *and was willing* to testify. In addition, because the witness was not affiliated with the victim's family, the court concluded that he would have had "no reason to misrepresent" the victim's recantation and would have added to the victim's mother's credibility. *Id.* at 968.

It is undisputed that Reth was on the Government's proposed witness list for trial. (Docket No. 1024, Government's Proposed Witness List at p., 17.) It also is undisputed that trial counsel to attempt to interview Reth prior to trial. (11/27/2013 Balogh Decl., Ex. G.) However, there is no evidence in the record that Reth was under subpoena and, thus, available to testify. *See, e.g., Alcala*, 334 F.3d at 872 (fact that alibi witness was under subpoena was sufficient to show availability). Although trial counsel was armed with the summaries of Reth's interviews with the FBI, Luong did not have access to Reth in advance of trial, because Reth's counsel rebuffed trial counsel's efforts to interview him. (11/27/2013 Balogh Decl., Ex. G.) Thus, had Luong called Reth as a witness, he would have done so without an opportunity to prepare Reth for cross-examination. *Cf. Alcala*, 334 F.3d at 890 ("[W]e fail to see ... how the decision to call Vogel without preparing him for cross-examination could possibly be considered sound trial strategy.") (citations and internal quotations omitted).

9

The Court concludes that Luong has not met his burden to show either that counsel's performance was deficient or that he was prejudiced by the failure to call Reth as a defense witness.

Accordingly, the Court DENIES relief on Claim XI.

**E.     Claim XII: Failure to Object to Jury Instructions**.

In Claim XII, Luong argues that trial counsel was ineffective, because he failed to object to the word "cause" in the jury instructions relating to Counts 11 and 14, the substantive Hobbs Act robberies. It is undisputed that Luong was not present at either robbery. However, the Government charged him as a principal and as an aider and abettor pursuant to 18 U.S.C. section 2. During the charging conference, Luong's co-defendants objected to including an aiding and abetting instruction on the Hobbs Act robberies. Luong expressed no opinion on that request.

The Government agreed to exclude the aiding and abetting instruction, and the trial court instructed that jury that to find Luong guilty on Counts 11 and 14, it had to find, *inter alia*, that Luong "caused employees [of the company] to part with computer chips and parts in their possession by the wrongful use or threat of force or fear." (Docket No. 1253, Final Jury Instructions, Instruction Nos. 34-35.)[2] There is no evidence that Luong's trial counsel objected to these instructions.

Luong argues that trial counsel should have objected to the use of the word "caused," because, prior to trial, the Ninth Circuit amended its model instructions on the Hobbs Act to change the word "caused" to "induced." Luong argues the amendment tracked the Hobbs Act statutory language on extortion more closely than the prior model instruction. (*See* 11/27/2013 Balogh Decl., Exs. H-I; Docket No. 2141-1, Declaration of Ethan A. Balogh filed May 28, 214, Ex. J.) The Court does not find Luong's argument persuasive. Luong was charged with robbery under the Hobbs Act, not extortion. (Superseding Indictment, Counts 11, 14.) The Hobbs Act defines robbery as "the unlawful taking or obtaining of personal property from the

---

[2] The captions to these instructions do refer to extortion. However, the text of the instructions, consistent with the charges in the Superseding Indictment, refer to robbery.

10

1 person or in the presence of another, against his will, by means of actual or threatened force, or
2 violence, or fear of injury . . . to his person or property." 18 U.S.C. § 1851(b)(1). Thus,
3 although Section 1851(b)(1) does not use the term "caused," it also does not use the term
4 "induced." The term induced is used only in Section 1851(b)(2), which defines extortion. The
5 Court cannot find that counsel's performance was deficient based on the failure to request an
6 instruction for a crime with which Luong was not charged.

7 In addition, the Government charged Luong with a violation of 18 U.S.C. section 2, in
8 both Counts 11 and 14. Luong argues that the Government only charged him as an aider and
9 abettor and did not charge him under a "causing" theory of vicarious liability. There are
10 conceptual differences between the aiding and abetting theory of vicarious liability, under
11 Section 2(a), and the causing theory of vicarious liability, under Section 2(b). However, "courts
12 have implied both subsections of § 2 in a federal indictment, whether or not they have been
13 specifically charged" for "it has long been held that an indictment need not specifically charge
14 aiding or abetting or causing . . . in order to support a jury verdict based upon a finding a
15 finding of either." *United States v. Armstrong*, 909 F.2d 1238, 1241 (9th Cir. 1990). In
16 *Armstrong*, the defendant was indicted for a substantive violation of making false entries in
17 federal firearms transaction records in violation of 18 U.S.C. section 2(b) and 18 U.S.C. section
18 922(m). On appeal, he argued that the government materially amended the superseding
19 indictment by implying an aiding and abetting charge.

20 The *Armstrong* court rejected this argument. Even though the superseding indictment
21 specifically referenced a causing theory of liability under Section 2(b), "the specific referral to §
22 2(b) in the superseding indictment of Armstrong does not preclude the implication of § 2(a)."
23 909 F.2d at 1242. The court reasoned that Section 2 does not define a substantive offense but
24 rather sets out which individuals can be held responsible for a substantive offense. *Id.* at 1243.
25 The inclusion of Section 2 in the indictment "merely described the degree of responsibility for
26 the crime . . . . [and] does not preclude the normal implication of other theories of
27 responsibility." *Id.* It follows that either Section 2(a) *or* 2(b) will support a conviction under a
28 vicarious liability theory, even if the Government does not reference a specific subdivision in

11

the indictment. *See id.*; *United States v. Howick*, 263 F.3d 1056, 1064 (9th Cir. 2001) ("[T]he superseding indictment did not charge Howick expressly with causing documents to be brought into the country . . . this omission does not foreclose subsequent conviction on a causation theory.")

Here, the trial court instructed the jury in accordance with Section 2(b), when it instructed the jury that they should find Luong guilty if he "caused employees . . . to part with computer chips and parts in their possession by wrongful use of threat of force or fear.." (Final Jury Instructions, 34-35.) Under *Howick* and *Armstrong*, the Government was not required to include a specific reference to Section 2(b) in the Superseding Indictment to support a jury verdict on that theory. *Howick*, 263 F.3d at 1064; *Armstrong*, 902 F.2d at 1242. Based on that reasoning, the Court cannot find that counsel acted unreasonably in failing to object to the instruction as given.

Accordingly, the Court DENIES relief on Claim XII.

**F.     Claim XIII: Sentencing.**

Luong was charged with violating 18 U.S.C. section 924(c), in connection with both the Hokkins and the Aristrocrat robberies. (Superseding Indictment, Counts 12 and 15.) It is undisputed that Luong did not actually handle a firearm during either of these robberies. The trial court instructed the jury that they could find Luong guilty on a *Pinkerton* theory of liability. (Final Jury Instructions, Instruction No. 40.) Therefore, in order for the jury to convict on these charges, it was required to find that it was reasonably foreseeable to Luong that a firearm would be used in the course of the robberies. (*Id.*)

Luong argues that trial and appellate counsel were ineffective, because they: (1) failed to argue that the penalties set forth in Section 924(o), rather than Section 924(c) should apply to Counts 12 and 15; and (2) failed to argue that the trial court could not "stack" sentences under Section 924(c), because the Government did not charge a "second or subsequent" offense in the Superseding Indictment. Luong also argues that the trial court erred by imposing multiple

12

sentences on the Section 924(c) counts, because the jury found a single, overarching Hobbs Act conspiracy.[3]

### 1. Ineffective Assistance.

#### a. Section 924(c) and Section 924(o).

In Counts 12 and 15, the Government charged Luong with violations of 18 U.S.C. section 924(c). Section 924(c) provides in relevant part that:

> [e]xcept to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall in addition to the punishment provided for such crime of violence . . . be sentenced to a term of imprisonment of not less than 5 years . . .
>
> In the case of a second or subsequent conviction under this subsection, the person shall –
>
> be sentenced to a term of imprisonment of not less than 25 years[.]

18 U.S.C. § 924(c)(1)(A)(i) and 18 U.S.C. § 924(c)(1)(C)(i).

Luong argues that because the Government incorporated by reference the conspiracies charged in Counts 10 and 13 into Counts 12 and 15, the Government actually charged Luong with a violation of 18 U.S.C. section 924(o), rather than a violation of Section 924(c). Section 924(o) provides that "[a] person who conspires to commit an offense under subsection (c) shall be imprisoned for not more than 20 years, find under this title, or both[.]" Luong argues that this argument was so obvious that trial counsel and appellate counsel could have had no strategic reason for failing to raise it. Luong further argues that if counsel had made this argument, he would have received a lesser sentence.[4]

---

[3] Luong raised each of these arguments on his second direct appeal, but the Ninth Circuit concluded that it lacked jurisdiction to consider these arguments. *Luong II*, 627 F.3d at 1311-12.

[4] Luong's claim is similar to a claim that counsel was ineffective for failing to file a motion. To prevail on such a claim, a defendant must show that "had his counsel filed the motion, it is reasonable that the trial court would have granted it as meritorious, and (2) had the motion been granted, it is reasonable that there would have been an outcome more favorable to him." *Wilson v. Henry*, 185 F.3d 986, 990 (9th Cir. 1999).

13

Although the Government incorporated by reference the conspiracies charged in Counts 10 and 13 in Counts 12 and 15, the Government charged Luong with conspiracies to violate the Hobbs Act, not conspiracies to use a firearm during a crime of violence. In addition, Luong does not cite to any Ninth Circuit case that clearly supported this argument at the time of his trial or his first direct appeal. Rather, he simply argues that the argument was obvious and had it been presented, it is reasonably likely that the trial court or the Ninth Circuit would have adopted his construction of Section 922. The Court is not persuaded. The Ninth Circuit has held that a defendant may be held liable for violations of Section 924(c) on a *Pinkerton* theory of liability. *See United States v. Allen*, 425 F.3d 1231, 1234 (9th Cir. 2005). Further, in a case involving similar charges, Luong raised the argument that applying the penalties set forth in Section 924(c) would be "contrary to Congress' intent because it would" render the provisions of Section 924(o) superfluous. The district court rejected that argument and reasoned that:

> Section 924(o) punishes persons who conspire to violate [section] 924(c), which is distinct from imposing *Pinkerton* liability on a person who conspires to violate 18 U.S.C. [section 1951 (a)], but whose coconspirators violate [section] 924(c). "In the latter case, the offender is subject to a form of vicarious liability resulting from his participation in the more general conspiracy; in the former, the liability is direct and results from a specific conspiracy to violate [section] 924(c)."

*United States v. Luong*, 2009 WL 1393406, at *17 (E.D. Cal. May 15, 2009) (quoting *United States v. Hunter*, 982 F. Supp. 541, 544 n.6 (N.D. Ill. 1997)); *see also United States v. Luong*, 2010 WL 727140, at *1 (E.D. Cal. Mar. 2, 2010) (rejecting argument that penalties set forth in Section 924(o) should be applied based on argument that, as the more specific statute, Section 924(o) should control over Section 924(c)).

The Court concludes Luong has not met his burden to show either that counsel was deficient for failing to a legal argument that was not clearly dictated by existing precedent or that it is reasonably likely that, had the argument been raised, it would have been adopted and that he would have received a more lenient sentence.

//

//

//

14

### b. Stacking.

Luong also argues that trial counsel also should have argued that he should not be subject to an enhanced sentence for a second or subsequent violation Section 924(c), because the Government failed to charge a second or subsequent offense in the Superseding Indictment. However, at the time Luong went to trial and was sentenced, the United States Supreme Court's opinion in *Deal v. United States*, 508 U.S. 129 (1993) was controlling authority. In *Deal*, the defendant was convicted of six violations of Section 924(c) in a single proceeding, based on his use of a firearm during six different robberies. 508 U.S. at 130. The Supreme Court rejected the defendant's argument that the term "conviction" was ambiguous and that, under the rule of lenity, it should not construe Section 924(c) to apply to multiple charges in a single proceeding. *Id.* at 131-33.

Luong argues that counsel could have raised this argument, because the Supreme Court did not address pleading requirements in *Deal*. In light of the Supreme Court's construction of Section 924(c) and the holding in *Deal*, the Court concludes that neither trial counsel nor appellate counsel were deficient in failing to argue that Luong could not be subject to an enhanced sentence. The Court also concludes that Luong has not demonstrated that, if they had raised this argument, there is a reasonable probability that the outcome would have been different. *Cf. United States v. Beltran-Moreno*, 556 F.3d 913, 916 (9th Cir. 2009) (noting that "decades-old circuit precedent" holds that "a defendant may be convicted and sentenced for multiple violations of § 924(c) so long as 'each 924(c)(1) count [is] supported by a separate predicate offense'") (quoting *United States v. Smith*, 924 F.2d 889, 924 (9thc Cir. 1991)).

### 2. Trial Court Error.

Luong's final argument is that the trial court erred when it imposed multiple sentences on Counts 12 and 15. According to Luong, when the jury convicted on the RICO charges, it necessarily concluded that there was a single overarching Hobbs Act conspiracy. Luong contends that he cannot be convicted on multiple Section 924(c) counts, when those charges are based on a single underlying crime. Luong raised this argument, unsuccessfully on his first direct appeal. *See Luong I*, 215 Fed. Appx. at 644. Luong posits that this Court should rule on

15

this issue, because the Ninth Circuit misconstrued his legal argument when it issued its opinion. If that is the case, it is not this Court's role to correct the alleged error.

Accordingly, the Court DENIES relief on Claim XIII.

**G.  Certificate of Appealability.**

Rule 11(a) of the Rules Governing Section 2255 Proceedings requires a district court to rule on whether the petitioner is entitled to a certificate of appealability in the same order in which the petition is denied. The Court concludes that Luong has failed to make a substantial showing that his claims amounted to a denial of his constitutional rights or demonstrate that a reasonable jurist would find the denial of his claims debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 383 (2000). Consequently, a certificate of appealability is not warranted in this case. Luong may not appeal the denial of a certificate of appealability but may seek a certificate from the Court of Appeals under Rule 22 of the Federal Rules of Appellate Procedure. Rule 11(a) of the Rules Governing Section 2254 Proceedings.

## CONCLUSION

For the reasons set forth above, the Court DENIES Luong's motion for discovery, DENIES his motion to vacate his sentence, and DENIES a certificate of appealability. The Court shall issue a separate judgment relating to this motion, and the Clerk may close the related civil case *Luong v. United States of America*, 12-CV-05039-JSW.

**IT IS SO ORDERED.**

Dated: March 18, 2015

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE